**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re: ROBERT WHITAKER and
ELAYNE G. MEDINA-WHITAKER

Case No. 13-11395

Debtor.

---

STANLEY Z. PEPLINKSKI.

Plaintiff,

v.

Adv. No. 13-01068

ROBERT WHITAKER and
ELAYNE G. MEDINA-WHITAKER

Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on the Motion to Amend Complaint ("Motion to Amend") and the Proposed Amended Complaint Objecting to Bankruptcy Filing and Discharge (the "Proposed Amended Complaint") filed by Plaintiff Stanley Peplinski, *pro se*. *See* Docket Nos. 12 and 20. The Plaintiff seeks to amend his complaint to include additional allegations detailing the misdeeds of Defendants Robert Whitaker and Elayne Medina-Whitaker. In his Complaint and Proposed Amended Complaint, the Plaintiff appears to seek a determination that certain debts are non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4) and that the Defendants' discharge should be denied under 11 U.S.C. § 727. After consideration of the Motion to Amend and the Proposed Amended Complaint, and being otherwise sufficiently informed, the Court finds that the Motion to Amend should be granted, in part, and denied, in part, as described below.

## BACKGROUND

The Defendants filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 23, 2013. Shortly thereafter, the Plaintiff commenced an adversary proceeding against them objecting to discharge and to the dischargeability of certain debts. In the Complaint and the Proposed Amended Complaint, Plaintiff alleges that the Defendants leased residential property from him but failed to pay rent. He alleges that after evicting the Defendants, he obtained a judgment from the state court in the amount of $8,402 for past-due rent. The Court discerns that the Plaintiff seeks to have that amount declared non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). The Plaintiff also seems to contend that the Defendants' discharge should be denied under 11 U.S.C. § 727.

The Defendants filed an answer to the Complaint on July 26, 2013. At a scheduling conference held in September 2013, the Plaintiff expressed his desire to amend his complaint. The Court set a deadline for him to file a motion to amend the complaint with the proposed amended complaint attached. The Plaintiff filed the motion but failed to attach the proposed amended complaint. At a later hearing, the Plaintiff indicated he had difficulties attaching the proposed amended complaint because it was over a hundred pages long. After explaining the concept of notice pleading to the Plaintiff, the Court gave him an additional opportunity to file a proposed amended complaint but limited it to 30 pages. The Plaintiff filed the Proposed Amended Complaint, which was 31 pages single spaced, and then separately filed several hundred pages of exhibits. The exhibits contained a large variety of personal information belonging to the Defendants, including their social security numbers, copies of their tax returns, and copies of their medical records, all of which the Court sealed.

LAW REGARDING PLEADING STANDARDS AND AMENDMENTS

Fed.R.Civ.P. 15(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7015, provides liberal standards for amending a pleading before trial. *U.S. v. Escamillo,* 2006 WL 1401634, * 2 (10th Cir. 2006). "[B]efore a responsive pleading is filed, a party may amend a pleading at any time without leave of court, and after a responsive pleading is filed leave to amend 'shall be freely given when justice so requires.'" *Id.* (quoting Rule 15(a)). Courts may deny a request to amend "for reasons such as 'undue delay, bad faith …, repeated failure to cure deficiencies …, undue prejudice to the opposing party…, [and] futility of the amendment.'" *Cohen v. Longshore,* 621 F.3d 1311, 1313 (10th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

An amendment would be futile when the proposed new complaint fails to state a claim upon which relief could be granted. *Tenison v. Morgan,* 2013 WL 323227, *2 (10th Cir. 2013) (noting that an "amendment[] would be futile …[where] the complaint, even if amended as proposed, would still fail to state a claim"). *See also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (same). Therefore, a court need not grant leave to amend if "the amendment would not cure the deficiency" under Fed.R.Civ.P. 12(b)(6), made applicable to adversary proceedings by Fed.R.Bankr.P. 7012.[1] *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

[1] In evaluating whether a pleading states a claim under 12(b)(6), the Court accepts as true all well pleaded facts and evaluates those facts in the light most favorable to the plaintiff. *See Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain enough facts to state a cause of action that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Court should look "to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007). To withstand dismissal, the plaintiff must sufficiently allege all facts necessary to support the required elements under the legal theory proposed. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

A proposed amendment must also comply with the pleading requirements set forth in Fed.R.Civ.P. 8, which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2), made applicable to adversary proceedings by Fed.R.Bankr.P. 7008. When a pleading contains information unrelated to the claim, the Court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions containing "redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f), made applicable to adversary proceedings by Fed.R.Bankr.P. 7012. *See also Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (suggesting that a court has discretion to strike redundant or scandalous matter from a prospective amended complaint). The purpose of Rule 12(f) "is to save the time and money that would be spent litigating issues that will not affect the outcome of the case." *United States v. Smuggler-Durant Mining Corp*., 823 F.Supp. 873, 875 (D.Colo.1993); *Tyco Electronics Corp. v. Milwaukee Elec. Tool Corp.*, 2012 WL 1205700, *11 (M.D. Pa. 2012) (same).

"Immaterial" allegations are generally defined as "hav[ing] no bearing on the subject matter of the litigation." *Johnson v. The County of Macomb*, 2008 WL 2064968, *1 (E.D.Mich. 2008). *See also Dean v. Gillette*, 2004 WL 3202867, *1 (D.Kan. 2004) ("Immaterial matter is defined as that which has no essential or important relationship to the claim for relief, or a statement of unnecessary particulars in connection with that which is material."). "Impertinent allegations have been defined as statements that do not pertain or are not necessary to the issues in question." *New Day Farms, LLC v. Board of Trustees of York Tp., Ohio,* 2009 WL 1652126, *3 (S.D. Ohio 2009) (citing 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1380). "Scandalous" allegations "cast a cruelly derogatory light on a party or other person" or "unnecessarily reflect[] on the moral character of an individual." *Glaser v. Jordan*,

2010 WL 1268151, at *2 (D.Colo. Mar. 30, 2010); *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C.2003) (citing 2 Moore's Federal Practice § 12.37[3] at 12-97). *See also Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("[I]f the complaint or other pleadings are abusive or contain offensive language, they may be stricken *sua sponte* under the inherent powers of the court.") (internal quotations omitted).

In applying the aforementioned rules, courts should construe a *pro se* litigant's pleadings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Allowances will be made, for example, "for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (internal quotations omitted). Notwithstanding these allowances, the Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Id.*

DISCUSSION

The Plaintiff seeks to amend his complaint to include additional allegations against the Defendants. According to the Plaintiff, the Defendants: (1) fraudulently induced the Plaintiff to allow them to live in his rental property for a substantial period of time without paying rent; (2) wrote a series of bad rent checks; (3) misappropriated funds earmarked for paying rent; and (4) lied on their bankruptcy petition and schedules. Consequently, the Plaintiff contends that the Defendants are not entitled to bankruptcy relief.

Based on these allegations, the Court discerns that the Plaintiff intends to object to the dischargeability of certain debts under 11 U.S.C. §§ 523(a)(2)(A) (fraud) and 523(a)(4)

(embezzlement and larceny).[2] Section 523(a)(2)(A) excepts from discharge any debts arising from fraud. To prevail on a non-dischargeability claim under that section, a plaintiff must demonstrate that: "1) the debtor made a false representation [or in the case of a false pretence, an implied misrepresentation that is meat to create and foster a false impression]; 2) ... with the intent to deceive the creditor; 3) the creditor relied on the false representation [or implied misrepresentation]; 4) the creditor's reliance was justified; and 5) the creditor was damaged as a result." *In re Larranaga*, 2011 WL 1344562 at *2 (Bankr.D.N.M. 2011) (citing *Fowler Bros v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir.1996)).

Section 523(a)(4) excepts from discharge debts arising from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Embezzlement consists of "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir.1988). Larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner." *Hernandez v. Musgrave (In re Musgrave)*, 2011 WL 312883, *5 (10th Cir. BAP 2011) (quoting 4 Collier on Bankruptcy ¶ 523.10[2], 523–77 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2009)).

To have standing to object to the dischargeability of a debt under Sections 523(a)(2)(A) or (a)(4), the movant must be the party who actually suffered the injury. *See* 11 U.S.C. § 523(c)(1) (noting that "the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on *request of the creditor to*

[2] In attempting to discern the Plaintiff's intent, the Court is not limiting him to claims under those subsections. If the Plaintiff believes the surviving allegations in the Proposed Amended Complaint support a nondischargeability claim under other subsections of 11 U.S.C. § 523(a), he may ask that those claims be added to the pre-trial order.

*whom such debt is owed*, … the court determines such debt to be excepted from discharge) (emphasis added).[3] A movant may not "bring a § 523(a) claim on behalf of third parties." *In re Boydstun*, 2013 WL 5134324, *5 (Bankr.D.N.M. 2013) (J. Thuma) (citing *In re Olson*, 454 B.R. 466, 478 (Bankr.W.D.Mo.2011)).

The Plaintiff also appears to object to the Defendants receiving a discharge under 11 U.S.C. § 727(a)(4).[4] An objection to discharge under Section 727(a)(4) requires the creditor to prove: "(1) that the debtor made a false statement under oath; (2) that the debtor knew the statement was false; (3) that she made the statement with fraudulent intent; and (4) that the statement was material." *In re Majors*, 2005 WL 2077497, at *3 (10th Cir. BAP 2005). *See also In re Brown*, 108 F.3d 1290, 1294 (10th Cir.1997) (creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath that relates to a material fact).

Many of the allegations in the Proposed Amended Complaint are unrelated to the Plaintiff's claims under Sections 523 or 727. The Plaintiff will therefore not be permitted to amend his complaint to include such allegations. Instead of identifying, line by line, which allegations are futile, immaterial, impertinent, or scandalous, the Court will discuss certain categories of allegations which he will not be allowed to assert. A copy of the Proposed Amended Complaint designating the deleted portions will be attached as an exhibit to this Memorandum Opinion and Order.

---

[3] *See also Corso v. Walker,* 449 B.R. 838, 848-849 (W.D.Pa. 2011) ("[A] creditor's standing to invoke § 523(a)(2)(A) is limited to fraud claims stemming from its own transfers to the debtor and is therefore precluded from seeking exceptions to the discharge of debts based on fraudulent activity allegedly committed by the debtor against third parties."); *In re Spivey,* 440 B.R. 539, 546 (Bankr.W.D.Ark. 2010) (dismissing a claim under Section 523(a)(4) where the alleged embezzlement caused no direct injury to the plaintiffs).

[4] As the Court previously explained in the context of Section 523(a), the Plaintiff is not limited to Section 727(a)(4) if his surviving allegations support a claim under other subsections of 11 U.S.C. § 727.

I. <u>Immaterial, Impertinent, or Futile Allegations</u>

The majority of the allegations the Court elected to strike contain legal arguments. While it is appropriate to state the legal theory upon which the factual allegations are predicated and the code section under which a claim is made, a complaint should not include legal arguments or a discussion of case law. *See Womack v. Ocwen Loan Servicing, LLC*, 2013 WL 5661128, *1 (D.Colo. 2013) (noting that "legal arguments…are not appropriately included in a complaint); *Lyshorn v. J.P. Morgan Chase Bank*, 2013 WL 792632, *2 (N.D.Cal. 2013) (dismissing complaint because it was "excessively long and include[d] irrelevant factual allegations … as well as improper legal argument). As discussed above, a complaint need only include "a short and plain statement of facts showing entitlement to relief." *Brainard v. BAC Home Loans Servicing, LP*, 2012 WL 5992181, *1 (10th Cir. 2012) (internal quotations omitted).

Another category of immaterial allegations relate to whether the Defendants filed their petition in bad faith, whether granting bankruptcy relief would constitute an abuse of Title 11, or whether their petition was otherwise defective. For example, Counts 1, 3, 15, and 19 relate to whether the Debtors: (1) signed their petition; (2) qualify for Chapter 7 under the means test; (3) should have filed jointly; and (4) should be permitted to file bankruptcy. Such allegations speak to dismissal of the Defendants' bankruptcy case and are not relevant to discharge or dischargeability. *See generally* 11 U.S.C. § 707(b); *In re Stewart*, 175 F.3d 796, 808 (10th Cir. 1999) (considering issues such as bad faith and abuse on a motion to dismiss under Section 707(b)). A creditor seeking dismissal must file a motion in the main bankruptcy case, not a complaint.[5] *See* Fed.R.Bankr.P. 1017(e) (The court may dismiss … an individual debtor's case

[5] The Court is not suggesting that the Plaintiff file a motion to dismiss, nor is it making any determination as to whether he would prevail on such a motion.

for abuse under § 707(b) *only on motion* and after a hearing….) (emphasis added).  The Court will therefore strike any allegations or counts seeking dismissal under Section 707(b).

Many of the allegations also relate to claims that the Plaintiff has no standing to pursue. For example, Counts 12 through 14 relate to whether debts for taxes, student loans, or medical bills are dischargeable.  Other portions of the Proposed Amended Complaint allege that Mrs. Medina-Whitaker embezzled from or committed various frauds upon individuals other than the Plaintiff.  As the Court discussed above, the Plaintiff only has standing to contest the dischargeability of debts owed to him.  Such amendments are futile and will therefore not be permitted.

Except as described below, the remaining allegations the Court intends to strike contain unnecessary particulars or are immaterial to the Plaintiff's claims.  For example, the Plaintiff accuses the Defendants of violating various laws that are unrelated to the judgment for past-due rent.  He provides details about whether, and to what extent, the Defendants receive food stamps or other social services.  None of these allegations are relevant to the matter at hand (*i.e.* whether the judgment for past due rent is dischargeable under Section 523 and whether the Defendants' discharge should be denied under Section 727).

II. Scandalous or Harrassing Allegations

A number of the allegations present scandalous facts which serve no purpose other than to embarrass or harass the Defendants.  For example, the Plaintiff questions the nature of the Defendants' romantic relationship, includes details about how often they purchase gifts for one another, and provides information about where the Defendants' daughter attended high school. He also alludes to a relationship Mrs. Medina-Whitaker had with another man and alleges that she and her husband act more like single people than a married couple.  As the Tenth Circuit

aptly observed, "[s]uch writings are intolerable, and [the Court] will not tolerate them." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (using Rule 12(f) to strike briefs that "do little more than attempt to impugn ... integrity"). The Court will therefore strike all scandalous allegations which are irrelevant to the Plaintiff's claims under Sections 523 and 727.

III. Exhibits

The Plaintiff included over a hundred pages of exhibits along with the Proposed Amended Complaint. The exhibits include photographs of: (1) the Defendants' dogs; (2) the contents of the Mrs. Medina-Whitaker's jewelry boxes; (3) the inside of the Defendants' restroom; and (4) the contents of the Defendants' closets. They also included unredacted copies of the Defendants' tax returns, cell phone bills, retirement account statements, personnel files, credit card statements, and medical records, and a copy of Mr. Whitaker's college diploma along with his father's obituary. The Plaintiff contends that he obtained these documents by digging through the Defendants' trash.

It is possible that some of these exhibits may be relevant to the Plaintiff's claims. However, a complaint need not "include specific evidence [or] factual allegations in addition to those required by Rule 8." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2nd Cir.2010). *See also E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 619 (6th Cir. 2013) (noting that a complaint "need not include evidence") (internal quotations omitted). To the extent the exhibits contain any information relevant to the Plaintiff's claims, such information is in the category of unnecessary particulars. The Court will therefore strike the exhibits in their entirety. In answering the Proposed Amended Complaint, the Defendants will not be required to respond to allegations regarding the contents of any of the exhibits. If the Plaintiff would like to reoffer the

exhibits at an appropriate time (for example, in connection with a dispositive motion or at trial), he may do so, subject to the rules of evidence and any order by the Court governing the exchange and presentation of exhibits.

WHEREFORE, IT IS HEREBY ORDERED that the Motion to Amend will be granted, in part, and denied, in part, as follows:

1. The Proposed Amended Complaint attached to this Memorandum Opinion and Order - which reflects the surviving allegations not stricken by the Court - will be filed of record by the Clerk's Office.

2. The Court will only consider the surviving allegations in that document and will not consider any allegations it has stricken.

3. In allowing the Plaintiff to assert the surviving allegations, the Court is making no determination as to their validity and/or whether they adequately state a claim under 11 U.S.C. §§ 523(a) or 727.

4. All exhibits filed in connection with the Proposed Amended Complaint (Docket Nos. 21-43) are stricken. Such exhibits will not considered by the Court unless and until they are re-proffered and admitted in evidence.

ORDERED FURTHER that the deadline for the Defendants to file an answer to the Amended Complaint, as modified by the Court, is **April 30, 2014.**

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 28, 2014

COPY TO:

Peter F Staiti
7400 Montgomery Blvd., Ste. 39
Albuquerque, NM 87109

Stanley Z. Peplinski
11220 Country Club DR. NE
Albuquerque, NM 87111



IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

IN RE

Robert Whitaker
Elayne G. Medina-Whitaker,
Debtors

Case No: 13-11395-j7

Stanley Z. Peplinski,
Plaintiff, Creditor

Adversary No. 13-1068 J

vs.

Robert Whitaker
Elayne G. Medina-Whitaker,
Defendants

**Proposed Amended Complaint Objecting to Bankruptcy Filing and to Discharge**

Comes now Plaintiff, Stanley Z. Peplinski, Pro Se, begs leave of this Court to file this amended complaint objecting to Debtors Chapter 7 Bankruptcy and discharge of all debts. And states that:

1. Plaintiff begs Court's permission to submit this lengthy complaint; something that may not be routine; but certainly within limits of court rules. Because Plaintiff alleges Debtor committed multiple counts of bankruptcy fraud, Plaintiff asserts that it is within his right to submit considerable details and extensive number of exhibits to back up his claims. And for sake of brevity, where Plaintiff intrudes exhibits it is meant to state "Exhibit xxx is a true copy of..."

2. Table 1 is a Table of Contents and serves as highlight of complaint; Table 2 is a list of Exhibits; both serve to facilitate Court in navigating thru this pleading. Background to this case is included as Exhibit 3. Debtor's family tree & relationship to Debtor's assets & debts are included as Exhibit 4.

**Jurisdiction, Venue and Standing**

3. This adversarial pleading is filed pursuant to USC §727 objecting to Debtor's Chapter 7 discharge; to determine the dischargeability of debt to Plaintiff; and is filed in accordance with Part VII, Adversarial Proceedings, of the Federal Rules of Bankruptcy Procedures regarding jurisdiction. This

Court has jurisdiction over these proceedings, the subject matter, personnel and venue to decide this objection. This objection is core to the referenced Debtor's Chapter 7 Petition and the pleader does consent to entry of final orders/judgment by this Bankruptcy Judge.

4. Plaintiff is a resident of Bernalillo County, New Mexico and is a U.S. Citizen.

5. Plaintiff has standing to bring this complaint: he is a creditor named in Debtor's Bankruptcy petition; and has right to object to discharge of his $8402 Metro Court Judgment

6. Plaintiff alleges that with respect to female Debtor named Elayne G. Medina-Whitaker: a) no such legal Debtor exists with the name Elayne G. Medina-Whitaker, (b) female Debtor has not provided proof of this identity; (c) there is no traceability of Elaine G. Medina-Whitaker to Plaintiff's judgment; (d) she has not provided proof of US citizenship; and (e) she made false oath on venue & residency sections of the petition. In effect Elayne G. Medina is not an individual; does not have standing in this Court; the Plaintiff begs this Court to dismiss Bankruptcy petition with prejudice and in support, Plaintiff states that:

*a.* [illegible]

*b.* Based on accumulated evidence, the name Elayne G. Medina-Whitaker is a fictitious name created by Debtor; i.e. Elayne G. Medina-Whitaker is not an individual. If this Court compares Debtor's name on the petition, Elayne G. Medina-Whitaker, with any official government records, like driver's license & IDs (Exhibits ____), NM MVD records (Exhibit ____) and SSA records (Exhibit ____) the Court will find that no such Debtor named Elayne G. Medina-Whitaker exists; which is prima facia evidence that female Debtor falsified her name on the petition; and that debtor is not an individual.

*c.* No Debtor named Elayne G. Medina-Whitaker resided at his rental property. Exhibit >>> lists the names of residence; but Debtor named Elayne G. Medina-Whitaker is not on the list; accuracy of the lease is attested by renters as noted by initials at the bottom of Exhibit >>>. Therefore On Form B1 Pg 2 in Section entitled "Venue" female Debtor made false oath when she put a check mark in the box marked *"Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District."*

*d.* On Form B1 Pg 2 of 46 in the Section entitled "Certificate by a Debtor Who Resides as a Tenant of Residential Property" the Debtor named Elayne G. Medina-Whitaker made false oath when she placed checkmark in the boxes marked *"Landlord has a judgment against the debtor for possession of debtor's residence"* Debtor named Elayne G. Medina-Whitaker is not listed in the Metro Court Judgment Case T-4-CV-2013-004000; see Exhibits ____

*e.* [illegible]

the Court will find that male Debtor falsified his legal name on the petition.

8. Plaintiff alleges that Bankruptcy case should never have commenced since Debtors failed to sign petition and attorney e-filed unsigned documents. Dismissal with prejudice of Chapter 7 is warranted; it would stop Debtors from obtaining an unjust defense and opportunity to refill with tainted evidence.

9. Plaintiff alleges that since Debtor's attorney e-filed the unsigned Petition, Forms and Schedules, it indicates that attorney did not have signed originals in his possession before e-filing; does not now possess signed original documents, and Debtors never actually reviewed & signed petition.

*10.* In re Tran 427 B.R. 805 Bkrtcy.N.D.Cal.(April 02, 2010) Debtor's attorney was sanctioned for e-filing petitions without Debtors signature: "*When an attorney electronically files a schedule on behalf of a client, he is certifying... he has the schedule in his physical possession bearing the original signature of the client. If the certification is false, the attorney is subject to sanctions pursuant to Rule 9011.*

*11.* ***In re Brown,*** *328 B.R. 556, 559 (Bkrtcy.N.D.Cal.2005). In this case, the negligence which caused the unsigned schedules to be filed was gross negligence... A complete and honest listing of all assets is at the very heart of bankruptcy relief. A debtor simply cannot, under any circumstances, be allowed to defend against an accusation of filing false schedules by demonstrating that he never actually signed them...It is very easy to see how the debtors ended up losing their discharge."*

12. **In re Wenk** 296 B.R. 719 Bkrtcy, E.D.Va., 2002 (16 July 2002) stated that: "*The court dismissed bankruptcy case since debtor's attorney filed a petition that had not been signed by debtor...Bankruptcy is a very personal action which should only be undertaken by the individual...* "*Federal Rule of Bankruptcy Procedure 5005(a)(2) provides that "[a] document filed by electronic means in compliance with local rule constitutes a written paper for the purpose of applying these rules...A case filed electronically is no different from a paper case filed in person at the counter. As such, the electronically filed petition must comply with local bankruptcy rule which specifically states that each petition filed must include an unsworn declaration with signatures of all debtors."*

13. **In re Moynahan,** Not Reported in B.R., 2008 WL 141585, Bkrtcy.N.D.Ohio,2008 (January 11,

[illegible]

## Count 2: Metro Court Judgment is Exempt from Discharge

14. Plaintiff avers that Metro Tenant-Landlord restitution case T-4-CV-2013-004000 is against Debtors named Robert Whitaker and Elayne Whitaker-Medina; not against Elayne G. Medina-Whitaker

a. Elayne Whitaker-Medina is the name stated on the Metro Judgment granted Plaintiff. Exhibit 19A

b. Elayne Whitaker-Medina is the name stated on the Metro Court Summons. Exhibit ____.

c. Elayne Whitaker-Medina is the name stated on the Return of Service. Exhibit ____.

15. [illegible] *has been commenced.*" And since a Debtor named Elayne Whitaker-Medina is not named anywhere on Debtor's voluntary bankruptcy petition or on any of the schedules, this Bankruptcy Court has no [illegible]

16. Therefore, Plaintiff alleges that Metro Judgment T-4-CV-2013-004000 is exempt from Chapter 7 bankruptcy proceeding; that the Bankruptcy Court should lift the stay against this Plaintiff/Creditor; and the Plaintiff be allowed to pursue collections against Elayne Whitaker-Medina.

17. 11 USC §727(a)(4) debtor's discharge should be denied when "*debtor knowingly & fraudulently, in connection with the case (A) made a false oath or account or (B) presented or used a false claim*".

[illegible] *opened for Thomas J. Moynahan, but the attached petition PDF was for Debtor Shawn L. Bowyer, for whom another case has already been separately commenced. This is not a problem that can be corrected by amendment of the incorrect petition PDF, because the filing of the petition by a person is the statutory act that effects commencement of a case. 11 U.S.C. § 30(a). Rather, this problem necessitates the opening of a new case with the correct petition for Mr. Moynahan in PDF form. The within case must necessarily be dismissed, as has been requested.*" Plaintiff bring to attention of this Court that the **In re Moynahan** Order is not reported, and begs this Court's permission to cite it here since provides reference to U.S.C., the meaning of commencement of a bankruptcy case and the importance of filing a petition with the correct Debtor's name(s). A copy of this Order is presented in Exhibit 18

*19.* Analogous to **In U.S. v. Marston 694 F.3d 131 C.A.1 (N.H.), 2012 (20 Sept 2012)** where Court of Appeals held that "*Debtor had used other names but failed to disclose those names on her bankruptcy petition was sufficient to support charge and conviction of false oath bankruptcy fraud claim... a debtor who files such a bankruptcy petition has to identify "All Other Names used by the Debtor in the last 8* [illegible]

filing of this case. "The evidence was sufficient for the jury to conclude that Debtor failed to reveal the aliases she had used was done with the kind of ... fraudulent awareness required by the statute."

20. Analogous to In re Lewis 51 B.R. 353 Bkrtcy. N.Y., 1985 (27 June 1985) where Debtor filed petition in her deceased mother's name to obtain immediate relief afforded by automatic stay provisions of 11 U.S.C. §362. *"The court dismissed debtor's entire case in order to preserve the integrity of the bankruptcy process."* The Court disallowed Debtor's attorney motion to amend the petition stating *"Accuracy in the caption of a bankruptcy petition is of substantive importance – not a mere matter of form...Permitting (Debtor) to amend her petition would afford her the protection of the Bankruptcy Code retroactive to the date on which she filed her petition, while permitting her to escape all of its responsibilities during that time...Amendment would impair the rights of (Debtor's) creditors resulting from the automatic stay...Debtor has essentially committed blatant fraud on the court...In accordance with...18 U.S.C. §3057 the Clerk of the Bankruptcy Court shall transmit a copy of the this Decision and Order along with copies of all papers contained in debtors file to the U.S. Attorney...The court has reasonable grounds to believe (Debtor) has committed a violation of 18 U.S.C. §152 knowingly and fraudulently making a false declaration, certification, verification, or statement under penalty of perjury"*

21. 18 U.S.C. §3057(a) *"Any judge, receiver, or trustee having reasonable grounds for believing that any violation under Chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships, or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States Attorney all the facts & circumstances of the case, the names of the witnesses and the offense or offenses to have been committed."*

**Count 3: Joint Bankruptcy Filing is Improper and Should be Denied**

22. Plaintiff alleges that Debtors have not provided any proof that they are married (Exhibits >>>> from Bernalillo and Valencia County Clerk); that Debtors are not actually married but just co-habitating; and that actions of Debtors even if they were married, is more akin to single individuals that a married couple. Therefore joint Bankruptcy petition does not meet the criteria for a joint petition, is inappropriate and should be denied by this Court.

11 U.S.C. §302 states *"A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter...After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated."* 11 U.S.C. §302

Historical[2] Notes, referencing Senate Report no. 95-989, § 302 *"specifies that a joint case is commenced by the filing of a petition under an appropriate chapter by an individual and that individual's spouse. Thus, one spouse cannot take the other into bankruptcy without the other's knowledge or consent... Factors that will be relevant in the court's determination include the extent of jointly held property and the amount of jointly-owned debts"*

23. Plaintiff alleges that, since Voluntary Bankruptcy Petition, Forms and Schedules are not signed by either Debtors, there is no record that one spouse consented to the other spouse to commence this Chapter 7 filing. Therefore, this Court should be dismiss with prejudice the Joint Bankruptcy petition. **In re Wenk 296 B.R. 719 Bkrtcy, E.D.Va., 2002 (16 July 2002)** *"Debtor's signature indicates debtor's consent to the bankruptcy filing, consent which can only be given by the debtor...The court dismissed bankruptcy case since debtor's attorney filed a petition that had not been signed by debtor."*

24. Plaintiff alleges that Debtors have not met 11 U.S.C. §302(a) that joint filing is limited only to married spouses; and barring proof of marriage, Court should deny and dismiss with prejudice the joint bankruptcy petition. **In re Coles 14 B.R. 5 Bkrtcy, Pa., 1981 (31 Aug 1981)** *"motion to consolidate cases for Debtors who were not married but had lived together for three years is denied; for the consolidation of cases treats the consolidated estates as one and may affect the substantive rights of creditor...Because the debtors are not spouses, they are precluded from filing a joint petition..."*

25. Plaintiff avers that Robert Whitaker was previously married and recorded his marriage to Sandra J. Kosinski. Exhibit >>>; clearly indicating he knows County Clerk's recording requirements & set precedence for recording a marriage certificate. If Debtors were married, they would have recorded their marriage certificate. Absence of marriage certificate, Debtors are not married; are fraudulently using married aliases like Mr. & Mrs. Robert Whitaker or Elayne G. Medina-Whitaker; and are fraudulently claiming bankruptcy status as Joint Debtors.

26. Plaintiff alleges female Debtor has consistently over her entire life, and even today, uses her unreported maiden name Elayne Gloria Medina a.k.a. Elaine G. Medina and Elaine Medina; and as such is acting more as a single women than a married Joint Debtor; on official government identification cards, social security administration (SSA) records, criminal cases, employment files, financial institutions and day-to-day business transactions

a. NMMVD records (Exhbit ), Plaintiff avers that if female Debtor was married but using her maiden name on official government identification cards then she was concealing her true identity which are criminal violations of US Bankruptcy Law and NM Motor Vehicle Statutes. NM MVD requires driver's license name change within 10 days after marriage. Failure to update driver's license records is a criminal offense per NMSA §66. NMSA §66-5-15 *"The license shall bear the the full name*

[2] *Unofficial compilation of the U.S. Code as of Jan. 4, 2012* http://www.law.cornell.edu/uscode/uscprint.html

*and the signature of the licensee. A license shall not be valid unless it bears the signature of the licensee."* NMSA §66-5-20 *"In the event ...of name change, the person to whom the permit or driver's license was issued ... obtain a replacement"* NMSA §66-5-22 *"When the name of a licensee is changed by marriage or otherwise... the person shall, within ten days, notify the division of the new address"* NMSA §66-5-24 *"(A) The division is authorized to cancel... driver s license ...if the licensee failed to give the required or correct information in his application or committed any fraud" and (B) Upon such cancellation, the licensee must surrender the license so canceled to the division.* NMSA §66-5-38 *"Making false affidavit is perjury... makes any false affidavit, or knowingly swears or affirms falsely to any matter or thing required by the terms of the Motor Vehicle Code [66-1-1 NMSA 1978] to be sworn to or affirmed, is guilty of perjury and upon conviction shall be punishable by fine or imprisonment as other persons committing perjury are punishable.* "

b. Law enforcement departments and criminal courts recognize female Debtor only by her legal name, maiden name Elaine G. Medina a.k.a. Elaine Medina. Exhibits >>>

c. All her SSA records, her SSN card and SSA benefits. Exhibits >>>> Since SSA still uses female Debtor's maiden name, it is further proof that female Debtor never submitted a form SS-5 because there was no marriage certificate that could be attached. Barring marriage certificate the SSA would consider the SS-5 as incomplete and would not accept the form nor change female Debtors name.

d. Separate annual income ~$25K- $29K in her maiden name. SSA Statement Exhibit

e. She files all IRS and NM tax returns as head of household; with no declaration of spouse. Exhibits >>>> SSA links[5] directly to IRS records, also in female Debtor's maiden name

f. ABQ Academy financial aid application filed by Debtors on behalf of their daughter list parents as Robert C. Whitaker and Elayne G. Medina; the Debtors unmarried names. Exhbits

g. Female Debtor claims being unmarried and used her maiden name to file for and get approval for food stamps and NM Medicaid for herself and her daughter Mariah . Exhibits >>> thru >>>

h. Female Debtor used maiden name to apply for and receive NM unemployment compensation Exhbits

i. Patient in Blue Cross BlueShield (BC/BS) medical insurance and hospital bills Exhibit >>>

j. She maintains unreported bank accounts, separate from male Debtor. Bank of Albuquerque account #[redacted] Bank of America account #[redacted] Compass Bank account #[redacted] Exhibits >>>; Female Debtor also has unreported joint account(s) with her daughter Mariah Medina

k. She has her own retirement & pensions, separate from male Debtor. Exhibits >>>

[5] http://www.socialsecurity.gov/employer/Guide501.doc

l. She conducts business in her maiden name separate from male Debtor Robert Whitaker; Mobile phone service (505)[redacted] Exhibit 40 ; Electric & gas utilities Exhibit 39;Circuit City account Exhibit 41;Secured & unsecured loans Exhibits; Credit card and applications Exhibit 36 ;

m. She has life and accidental death insurance policies in her maiden name Exhibit l

n. Even advertisers recognized female Debtor by her maiden name. Exhibit

o. That, except for a few token gifts, female Debtor purchased all of her jewelry, watches, decorative pieces, clothes & shoes, furniture, furnishings, household items, area rugs, paintings in her sole and separate name; has full controls of her assets, including their disposition, independent of male Debtor.

27. Plaintiff alleges male Debtor consistently used his legal name and unreported aliases to conduct all manner of business and acting more as a single man than a married debtors: on official government identification cards, social security administration (SSA) records, employment files, financial institutions; day-to-day business matters; has separate income, assets, financial accounts from female debtor.

a. His State Employee Credit Union (SECU) account [redacted] solely in his name Exhibits

b. He has income independent of female Debtor's and files separate tax returns, Exhibits >>>

c. He purchased and registers all 6 vehicles valued ~$29K in his name or in concert with another family member; but nothing is registered jointly with female Debtor; Exhibits >>>>

d. He purchased all the hand and power tools, workshop equipment, garden tools, ladders; automotive tools; storage equipment; stereo equipment, sound system , video recorders, cameras, digital records/players and computers.

e. Except for a few token gifts, male Debtor purchased all his own jewelry, watches, clothes and shoes.

f. Each Debtor has their own retirement plans, life insurance & accidental death insurance; and has complete control of their assets independent of the other Debtor

28. Plaintiff alleges each Debtor brought and takes away luxury items from their separate lives before co-habitating; and the each Plaintiff purchased new luxury items individually and not as joint purchase

**Count 4: Debtor False Oath, Fraud & Concealment Re True Identity & Aliases**

29. Plaintiff alleges both Debtors committed false oath, fraud, concealment and destruction of vital records when they failed to reveal their true identify and disclose all aliases used within 8 yrs immediately preceding filing of petition; and such failure has a direct bearing on this case. For a totality of these alias allegations, Plaintiff requests this Court dismiss with prejudice the Debtor's Bankruptcy petition

30. Plaintiff alleges Debtors list of aliases feels like a "Fruit-of-the-Month" club where each Debtor used an alias to target specific class of Creditor; many aliases were fabricated; in other situations Debtors used unreported names & credit of relatives and previous creditors. Known male debtor's aliases can be gleamed from debtor records Exhibits ....

a. Male Debtor listed only Robert Whitaker; whereas in reality he uses at least 9 different aliases:

| | | |
|---|---|---|
| Robert Craig Whitaker | R.P. Whitaker | Fred K. Whitaker |
| Robert C. Whitaker | R.P. Whitaker, Jr. | Fred Whitaker |
| Robert Whitaker | R.C. Whitaker | |

b. Female Debtor lists only Elayne G. Medina-Whitaker; whereas she uses at least 18 different aliases:

| | | |
|---|---|---|
| Elaine Gloria Medina | Elaine Whitaker | Joe Montoya |
| Elayne Gloria Medina | Elaine Medina-Whitaker | Elane Montoya |
| Elaine G. Medina | Elayne G. Medina-Whitaker | Elayne Montoya-Medina |
| Elayne G. Medina | Elayne Medina-Whitaker | Beatrice Medina |
| Elaine Medina | Elayne Medina Whitaker | Walter J. Florence & Cheryl B. Florence |
| Elayne Medina | Elayne Whitaker-Medina | |

31. The abridged instructions for completing the *Voluntary Petition* (Form B1), second block, clearly state "*insert all other names* (i.e. aliases) *used by the debtor in the last 8 years, including married, maiden and trade names.*" And the complete set of instructions[7] for completing bankruptcy forms state:

*a.* Instruction #6: "*Answer truthfully. You must sign a declaration under penalty of perjury that the information you have provided on your bankruptcy forms is true and correct.*"

*b.* Instruction #8: "*Include the debtor's full name, all other names used within eight years before filing the petition, the debtor's address, and the county of residence in the spaces provided. ...Pursuant to Federal Rule of Bankruptcy Procedure 1005, all other names used by the debtor or joint debtors in the past eight years, including married, maiden, and trade names, shall be included in the petition.*"

32. In re Scott, 77 B.R. 636 Bankruptcy, N.D. Ohio, 17 Sept 1987 the Court stated that :

*a.* "*The information provided by a debtor in ...petition should not only be complete but truthful so that the Court and other parties in interest can reasonably rely upon the data contained therein.*"

*b.* On the subject of fraud, the Court stated that: "*There is no general rule for determining what facts will constitute fraud, but it is to be found or not according to the special facts of each particular case. It is rarely susceptible of direct proof, but must ordinarily be established by circumstantial evidence and legitimate inferences arising there from, which taken as a whole, will show the fraudulent intent or purpose with which the party acted.*"

c. On the subject of full disclosure of aliases and addresses, the Court stated that: *Since the debtor indicated in her filing the she had not used, or was not known by, any other names and addresses within the six (6) years immediately preceding the filing of her petition, evidences a clear intent on her part, inter alia, to conceal her identity to the Court and the Creditors. Such conduct on her part was fraudulent.. Heretofore her case is hereby dismissed.*

[7] http://www.caeb.uscourts.gov/documents/Forms/MISC/Forms_Instructions.pdf

33. Plaintiff avers unreported alias Robert Craig Whitaker is male Debtor's birth name so there is no justification for Debtor not listing his birth name on his petition; especially when he used his birth name on so many important documents including Debtor's UNM Diploma and transcripts Exhibits ___

~~34. Plaintiff avers that male Debtor used the middle initial of his birth name to create unreported alias~~ Robert C. Whitaker then used this unreported alias on all NM MVD driver's license, official government identification cards, local & federal taxation records, social security records, employment records, parental records for his children's school applications & financial aid requests, vehicle purchases & registrations, financial accounts and retirement plans and as such have a direct linkage to male Debtors identity, sources of income, deferral of income and assets. So there is no justification for male Debtor not listing Robert C. Whitaker on his petition. Exhibits >>>>

35. Plaintiff avers male Debtor usurp his father's name R.P. Whitaker & credit to purchase a 2001 ~~GMC Jimmy, disclosed he was vehicle owner & made vehicle loan payments. Exhibits>>>>~~

36. Plaintiff avers that male Debtor usurp his brother's name, Fred K. Whitaker, a.k.a. Fred Whitaker & his credit to purchase a 2004 Honda Accord License HSX898, made disclosure he was owner & made vehicle loan payments. Exhibits...

37. Plaintiff alleges Elaine Gloria Medina is joint female Debtor's true maiden name, including the proper spelling of the first name. Therefore, there is no excusable reason why she did not list her maiden name on form B1. Failure by Debtor's attorney to assure maiden name was listed on Form B1 indicates this petition was either rushed, was carelessly prepared, was not reviewed & signed by Joint Debtor or was intentionally left blank to create impediment to finding true identity and assets of female Debtor.

~~38. Plaintiff alleges female Debtor uses abridged version of her maiden name, Elaine Medina &~~ Elaine G. Medina on her official government records and identification cards, including her driver's license and Social Security records. Exhibits ___ and ____ Therefore, there is no rational explanation why female Debtor did not list aliases of her maiden name on form B1. And this case should never have commenced since Elayne G. Medina-Whitaker does not match the name as it appears on identification such the driver's license; where first names are spelled differently & surnames are different; in violation of Bankruptcy rules that clearly state Debtor's are to provide proof of their identity by submitting copies ~~[illegible]~~

39. Plaintiff alleges Debtors committed false oath, fraud & concealment on Schedule B L24 by not providing *"Customer lists and other compilations containing PII provided to debtors in connection with obtaining a product or service for personal, family & household"* by failing to report family & friends Joe Montoya, Beatrice Medina, Steven A. Medina, Christina Padilla & Francis M. Medina. Exhibits.

40. Plaintiff alleges that ~~Debtors has a long and convoluted relationship with a man named Joe Montoya and~~ she committed false oath, concealment and fraud when female Debtor failed to disclose

aliases Elayne Medina, Elaine Whitaker, Elayne Whitaker, Joe Montoya, Joseph Montoya, Elayne Montoya-Medina "Joe and Elane Montoya" and Elane Montoya; and that she used these aliases and individual person"s credit to obtain goods and services Exhibits,,,

~~a. Female Debtor received $500 kickback from GMC using Joe Montoya Exhibits~~

~~b. Female Debtor received Medicaid wages for purportedly taking care of Joe Montoya Exhibits~~

~~c. Female Debtor received home delivered news[illegible] using Joe Montoya Exhibits~~

~~d. Female Debtor [illegible] Dish Satellite service using Joe Montoya Exhibits~~

~~e. Female Debtor rented and then embezzled a viola using Joe Montoya Exhibits~~

41. Plaintiff alleges that Debtors committed bad faith, false oath, concealment, embezzlement, failure to maintain records, destruction of records and fraud in this Bankruptcy case; [illegible]

a. Female Debtor committed false oath bankruptcy fraud when she failed to disclose her aliases Elaine Whitaker & Elayne Whitaker; and name of Joe Montoya, whose name & credit she used to rent viola.

b. Debtors committed false oath bankruptcy fraud when they failed to disclose that they are in possession of a viola (15" Johannes Kohr SN RVS8218) valued at $1477 in 2006.

c. Female Debtor committed false oath bankruptcy fraud when she failed to disclose the Robertson & Sons Violin Shop as a Creditor for which female Debtor had a rental account number MON2974 with an unpaid balance of $1477, back in 2006 and that the balance as of today remains unpaid.

~~[illegible] Failure to provide "Customer lists and other compilations containing PII provided to debtors in connection with obtaining a product or service for personal, family & household". Failing to report name of Joe Montoya in connection with embezzled viola.~~

~~42. NMSA §30-16-8(A) "embezzlement consists of a person embezzling or converting to the person's own use anything of value, with which the person has been entrusted, with fraudulent intent to deprive the owner thereof." Female Debtor"s embezzled since she accepted rented viola from the Robertson & Sons Violin Shop; was entrusted with viola per terms of rental agreement, then for 8 years kept viola as her own, without making rental payment; and even still maintained possession of the viola until this Court ordered to return it to the Violin Shop. NMSA §30-16-8(D) states that "Whoever commits embezzlement [illegible]~~

~~two thousand five hundred dollars ($2,500) is guilty of a fourth degree felony.~~" And female Debtor violated U.S.C. §727(a)(3) and U.S.C. §727(a)(4)(D)

~~43. Citing U.S. v. Marston, "that (Debtor)/Defendant had used other names but failed to disclose~~ *those names on her bankruptcy petition was sufficient to support charge and conviction of false oath bankruptcy fraud claim.* And failure to "*identify creditors of different classes in separate schedules. In Schedule E, which asks for all creditors with unsecured priority claims*" As in Marston, it is obvious that Debtor's failed to disclose the alias Joe Montoya and creditor Robertson and Son's Violin Shop. For "*To reveal her use of alias and this creditor would have pointed directly to female Debtor as the perpetrator of embezzlement. Of course, female Debtor did not have to make any such admissions; but once she chose to file for bankruptcy she could not then represent under penalty of perjury that she had ~~accurately answered the questions on her petition.~~*"

44. Plaintiff alleges that female Debtor's embezzlement is pattern of fraud ~~and poor character; supported by the fact that she was previously convicted of shoplifting. Case #MR04092. Exhibits~~

~~45. Plaintiff begs this Court to transfer this information to the U.S. District Attorney for prosecution of violations of Bankruptcy laws and to the Albuquerque Police Dept (APD) for prosecution, of both Joe Montoya and female Debtor, for 4th degree felony embezzlement under NMSA §30-16-8(A) and (D).~~

46. Plaintiff alleges that if Debtors are claiming to be married then female Debtor committed false oath, concealment, failure to maintain records, destruction of records, Bankruptcy fraud, ~~Medicaid fraud, Food Stamp fraud and state & federal tax fraud & tax evasion and NM unemployment fraud.~~ Debtor's own records and exhibits provide prima fascia evidence of fraud. Exhibits>>

a. ~~Committed Medicaid fraud by falsifying her employment records with **Personal Care Management**~~ **Employment** using a variant of her maiden name Elayne G. Medina or Elayne Medina; and falsifying associated timecards for purportedly providing personal care to Joe Montoya. As an example female Debtor had a full time job at a doctor's office while concurrently billing Medicaid for personal care to Mr. Montoya. Other examples of fraud can be gleamed from Debtors records. Exhbits

b. Committed IRS & NM tax fraud & evasion by using her maiden name on tax returns and not reporting income from Personal Care Management. Exhibits

c. Federal Food Stamp Program fraud by using her maiden mane, claiming no husband & falsifying her application for food stamps. Exhibits

d. Committed NM Unemployment fraud by using her maiden name and falsifying application. Exhibits

e. **U.S. v. Marston** "*To reveal her use of alias would have pointed directly to female Debtor as perpetrating fraud on her past employment and Medicaid Program. Of course, female Debtor did not have to make any such admissions; but once she chose to file for bankruptcy she could not then ~~represent under penalty of perjury that she had accurately answered the questions on her petition.~~*"

Debtor's Personal Care Management employment records and time card submissions to warrant Court to pass on this information to the U.S. Attorney and Medicaid Program to investigate further for possible Medicaid fraud by both the female Debtor and Joe Montoya.

48. Plaintiff alleges that there is inconsistency between Beatrice Medina Medicaid records and female Debtor's Personal Care Management employment records and time card submissions to warrant Court to pass on this information to the U.S. Attorney and Medicaid Program to investigate further for possible Medicaid fraud by both the female Debtor and Beatrice Medina.

49. Plaintiff alleges that Debtors committed false oath, concealment and fraud when on **Form B1** female Debtor failed to disclose aliases Beatrice Median and Bea Medina. Female Debtor has a ... biological mother. Female Debtor usurp the name and credit of Beatrice Medina to obtain cash; earn employment &wages; obtain credit, services and products using the unreported aliases Beatrice Medina and Bea Medina. From Debtors own records we gleam that:

a. Female Debtor received $500 kickback from GMC using Beatrice Exhibit

b. Female Debtor received Medicaid wages for purportedly taking care of Beatrice Medina Exhibit

c. Female Debtor received utility service using Beatrice Medina Exhibit

d. Female Debtor received phone service using Beatrice Medina Exhibit

e. Debtors received automobile and renters insurance using Beatrice Medina Exhibit

f. Debtors received DirecTV Satellite service using Beatrice Medina Exhibit

50. Plaintiff alleges that female Debtor and Beatrice Medina committee, in the 2007-08 Medicaid fraud, when female debtors using unreported aliases submitted false application and employment timecards to New Mexico Consumer Direct Personal Care, LLC; which were subsequently paid by Medicaid. As example during the week 17 – 23 July '07 female Debtor billed Medicaid for providing services to Beatrice Medina, but same week female Debtor was on vacation in Disneyland using unreported Southwest Tickets purchased using maiden name Elaine Medina. Exhibits.

51. Plaintiff brings to the attention of this Court that female Debtor may be in violation of state and Federal HIPA and to pass on this information to the U.S. Attorney and Medicaid Program for investigation. All of Joe Montoya's and Beatrice Medina's Medicaid records are HIPA protected. Debtor HIPA violations include (a) Debtor being in possession of Joe Montoya's Medicaid records instead of retaining records at her employer place of business; (b) abandoning & losing control of Medicaid records for anyone to pick the documents, to disclose that the individuals was getting Medicaid; and the type & ... (c) attempted destruction of Medicaid records.

52. Plaintiff alleges that Debtors committed bad faith, false oath, concealment, failure to maintain records, destruction of records and fraud in this Bankruptcy case: On **Schedule B Line 24** failure to provide *"Customer lists and other compilations containing PII provided to debtors in connection with obtaining a product or service for personal, family & household"* Failing to report name of Joe Montoya and Beatrice Medina and associated Cable and Satellite services.

**<u>Count 5: Debtor False Oath & Concealment Re Addresses</u>**

53. Plaintiff alleges Debtors committed false oath, bankruptcy fraud, concealment and destruction of vital records by not providing all addresses used within the eight years immediately preceding filing of petition; falsifying address on petition; maintaining false address in court file for 8 months; and failure to disclose current address with this court & creditor despite repeated requests by Plaintiff. For a totality of these allegations, Plaintiff requests Court dismiss Bankruptcy case with prejudice.

54. Plaintiff alleges Debtors used 11 unreported addresses Exhibits>>>

7317 Welton NE,ABQ, NM 87109
6706 Los Arboles NE, ABQ, NM 87112
8607 Los Arboles NE, ABQ, NM 87112
8706 Los Arboles NE, ABQ, NM 87112
615 McCloskey Dr. SW, ABQ, NM 87121
1421 ½ Bonitas SW, ABQ, NM 87105
6229 Dennison Rd SW, ABQ, NM 87121
6225 Dennison Rd SW, ABQ, NM 87121
3519 Thaxton SE ABQ, NM 87106
4901 Lafayette NE, ABQ, NM 87
10332 Heron Rd SW ABQ, NM 87121

55. Plaintiff alleges that both Debtors committed false oath and fraud by listing their address as 7300 Welton Dr. NE. ABQ, NM 87109 and continue using this address post petition. Metro Court Judge had restored this rental property back to Plaintiff; tenants were ordered by Metro Court Judge to vacate NLT 22 April 2013; the day before commencement of Bankruptcy case, tenants had been served with and were in the process of being evicted from this address; and tenants had already made other living arrangements. And there was no Debtor named Elayne G. Medina-Whitaker resided at his rental property.

~~56. Plaintiff alleges that failing to provide an accurate, updated and current Debtor physical address is concealment, clear indication that Debtor's don't want to be found, blatant disregard for the law, and an insult by fraudulently using rental property address while concealing their whereabouts.~~

57. Plaintiff begs this Court to order Debtors to (a) stop using Plaintiff's rental property address; (b) immediately provide & update court records with current physical address(es); or (c) face court sanctions

~~58. Plaintiff alleges that Debtors actions to continue using fraudulently using 7300 Welton Dr. NE as their address, 8 months post commencement of their petition, is also criminal code violation of NM MVD Statues §66; failure by Debtors to obtain updated NM driver's license and update vehicle registration records, and should noted by this Court.~~

~~a. NMSA §66-5-16 *"The license shall bear the current NM physical or mailing address"*~~

b. NMSA §66-5-20 "In the event ...of address change, the person to whom the permit or driver's *license was issued ... obtain a replacement"*

c. NMSA §66-5-22 *"Whenever a person,... moves from the address named in the issued license... the person shall, within ten days, notify the division of the new address in writing or by electronic media pursuant to department regulations. "*

d. NMSA §66-5-24 *"(A) The division is authorized to cancel... driver s license ...if the licensee failed to give the required or correct information in his application or committed any fraud" and (B) Upon such cancellation, the licensee must surrender"*

59. Plaintiff begs this Court to inform US District Attorney and NM MVD that both Debtor driver's licenses & vehicle registrations records are out of date & some are fraudulent; MVD to suspend licenses & registrations until such time as current & correct information is provided by Debtors to MVD; APD to prosecute each Debtor for violation of NM MVD statutes; Court should seize both Debtor's licenses and hand them over to NM MVD Director, so as not to allow Debtors to continue using false identifies.

## Count 6: Debtor's Pre-petition Criminal Acts are Not Dischargeable Debts

60. Plaintiff alleges Debtor's pre-petition committed felonious criminal acts to defraud Plaintiff, KFCU and ABCWUA: female Debtor embezzled rent money, she made false accusations and false oath regarding KFCU role in missing rent money; male Debtor issued worthless checks and both Debtors feloniously obtained accommodations and & utilities. For a totality of these allegations, the Metro Court Restitution Judgment $8402Judgment (Exhibit ____) should be exempt from Bankruptcy discharge. Exhibits ___ thru ___ . U.S.C. §727(a)(7) discharge shall be denied if *"the debtor has committed any act specified in §(2), (3), (4), (5), or (6) of this subsection, on or within 1 year before the date of the filing of the petition"* U.S.C. §727(a)(4)(A) discharge shall be denied if *"the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account"*

61. Plaintiff alleges female Debtor embezzled cash from male Debtor's account(s) and used funds for personal gain instead of making deposits to Plaintiff's KFCU account; which subsequently resulted in civil case and Metro Judgment. Therefore, the Metro Court Judgment is exempt from Bankruptcy. During Metro court trial, as part of discovery, Debtor's attorney provided Debtor's bank statements, Exhibit ___ showing female Debtor making cash withdrawals from male Debtor's State Employees Credit Union account [redacted]2000; she made false oaths by claiming she made night deposits at KFCU (Exhibit ____) and laid blame that KFCU had lost rent deposits. Subsequent KFCU investigations (Exhibit ____) produced null results indicating female debtor made false oath and embezzled the funds. Female Debtor's actions meet the definition of criminal intent, because the embezzlement were premeditated and calculated acts, occurred approximately twelve times over a period of six months,

coincided twice each month when male Debtor's employment direct deposit was made; and there was no excuse for her actions NMSA §30-16-8(A) *"embezzlement consists of a person converting to person's own use anything of value, with which the person has been entrusted, with fraudulent intent to deprive the owner thereof."* Black's Law Dictionary 9th Edition defines "criminal intent" as: intent *to commit an actus reus without any justification, excuse or other defense. Also termed felonious intent."* **State v. Austin** 80 N.M. 748, 461 P.2d 230 N.M. App. 1969, September 19, 1969 *"Criminal intent" is more than "intentional" taking; rather, it is a mental state, a conscious wrongdoing.* NMSA §30-16-8(E) *"Whoever commits embezzlement when the value of the thing embezzled or converted is over two thousand five hundred dollars ($2,500) but not more than twenty thousand dollars ($20,000) is guilty of a third degree felony."*

62. Plaintiff alleges two additional two criminal components to Debtors actions in the Metro Judgment, therefore, the $8402 is exempt from discharge in Bankruptcy case. (a) Debtors criminally obtained accommodations without paying rent; violation of criminal statute NMSA §30-16-16(A) "[illegible] entertainment or accommodations without paying with the intent to cheat or defraud the owner or person supplying the service, food, entertainment or accommodations.' NMSA §30-16-16(C)(4) *"Whoever commits falsely obtaining services or accommodations when the value of the service, food, entertainment or accommodations furnished is more than two thousand five hundred dollars ($2,500) but not more than twenty thousand dollars ($20,000) is guilty of a third degree felony"* (b) Debtors criminally obtained water, sewer and trash utilities from ABCWUA without paying over $400 for those services; in violation of criminal statute NMSA §30-16-16(A) NMSA §30-16-16(C)(4) *"Whoever commits falsely obtaining services ... when the value of the services... furnished is more than two hundred fifty dollars ($250) but not more than five hundred dollars ($500) is guilty of a misdemeanor"*. The Plaintiff ended up paying Debtor's unpaid balance to prevent ABCWUA from placing a lien against his rental property.

63. Plaintiff requests Court to call upon US Attorney and APD to prosecute Debtors for embezzlement, falsely receiving accommodations & utilities; and issuing worthless checks.

**Count 7: Debtors Acted in Bad Faith**

64. Plaintiff alleges that Debtors acted in bad faith, contrary to Bankruptcy Laws, and that this entire bankruptcy filing is a scam initialed before the Metropolitan Court Case even commenced. Debtors never had any intentions to pay rent, the utilities or the Metro Court Tenant-Landlord judgment; Debtors pocketed the cash that were intended for these purposes and then used the Metro Court and Federal Courts to obtain discharge of their debt. In affect the Debtors are attempting to use the Bankruptcy system to better themselves at expense of Plaintiff; which are clear violations of bankruptcy laws.

65. Plaintiff alleges that Debtors knew that Landlord/Plaintiff was wise to their KFCU rent deposit fraud (Count ) and was planning on taking tenants to Court for Restitution and eviction. In response, to Debtors hired bankruptcy attorney Peter F. Staiti to represent Debtors in a Tenant-Landlord case filed by Plaintiff in Metropolitan Court. ~~Mr. Staiti moved to Albuquerque from Massachusetts where he practiced and specialized as a bankruptcy attorney and now has setup office as a bankruptcy attorney in Albuquerque, NM. But Mr. Staiti does not normally handle landlord disputes~~. Debtors with pre-meditated intent lost (known as a dive in the sport of boxing) the Tenant-Landlord case just so that a judgment for non-payment of rent could be entered for the record; whereby Debtors would then immediately turn around to file Chapter-7 Bankruptcy and falsely claim insolvency and no assets. This was a calculated plot from the beginning so that Debtors, with malice intent, could rob Landlord/Plaintiff; pocket the $8402 cash they were supposed to be paying Plaintiff; live rent and utility free; and caused damages to the property. ~~Why else would Debtors hire a Bankruptcy attorney, who had limited experience in Tenant-Landlord disputes & law, to Defend Debtors in Metro Court, other than as part of a premeditated plan to prepare for eventuality of filing for Chapter-7 discharge? And what better way to achieve their fraudulent goals, than to hire Bankruptcy attorney as Metro Court council, lose Metro Court case and then claim insolvency.~~

~~65. Plaintiff alleges then Debtors executed their premeditated scheme which resulted in their filing a fraudulent Chapter 7 petition; in direct violation of Bankruptcy laws that are meant to assure that Debtors don't attempt to use the judicial system to hide or get away with schemes that benefit the Debtor at expense of Creditor.~~

66. Debtors did not show up for negation meetings; did not deliver $2300 as promised.

## Count 8: False Oath, Fraud and Concealment re Debtor's Vehicles

*67.* Plaintiff alleges Debtors made false oath, bankruptcy fraud and concealment when on Schedule B L25 they declared ownership of only 1 vehicle, 2004 Honda Accord; they did not own or were in possession any another vehicles; and that no vehicles was being held by someone else.

*68.* Plaintiff alleges that Debtors actually own 6 vehicles: (a) that Debtors are the registered owners of four vehicles; (b) that Debtors own and in possession of two vehicles that Debtors keep registered under some else's name; and (c) that Debtors possibly own one more, seventh, vehicle that is being used and held by someone else. Six of the seven vehicles are summarized in Exhibit ____Table>>>> below and described in detail in the following section. ~~Citing Joe Brown Ref[8] "*The bankruptcy system is*~~

[88] Identifying Bankruptcy Fraud by Joe G. Brown, et. al. http://www.crfonline.org/orc/pdf/ref11.pdf

~~*based on the theory that a debtor will make full disclosure of all assets and liabilities so that the final disposition is in accordance with the requirements of the law.*~~"

69. Plaintiff alleges that estimated total retail value of the 6 vehicles, listed at the top half of Table, is ~$29,000 as opposed to $7,700 disclosed by Debtors. In addition the total value of the 4 vehicles listed in the lower half of Table>>> is ~$38,000; making the combined value of all 10 vehicles in Table >>> ~ $67,000; and this figure more accurately represents the vested interest by this Court and Plaintiff.

**70.** **<u>The 2004 Honda Accord,</u>** NM HSX898, is the only vehicle listed by Debtors. However, Debtors committed false oath, fraud and concealment by failing to list alias Fred K. Whitaker as co-signed for the vehicle; and undervalued vehicle value by $2900; actual NADA value is $9900. Exhibits >>> thru >>>.

**71.** Plaintiff alleges Debtors committed false oath, fraud and concealment and their actions serves to support Plaintiff's claim to dismiss Bankruptcy case with prejudice by failing to disclose ownership of :

a. **<u>2001 GMC Jimmy</u>** VIN 1GKDT13W812114904; that male Debtor used unreported alias R.P.Whitaker to purchase this vehicle and kept it registered in R.P. Whitaker's name. This vehicle has a NADA retail value of ~$4475. Exhibits >>> thru >>>

b. **<u>1994 Honda Accord</u>** VIN 1HGCD7152RA060214; that male Debtor used unreported alias Robert C. Whitaker to purchase this vehicle and kept it registered in Robert C. Whitaker name. This vehicle has a NADA retail value of ~$2675. Exhibits >>> thru >>>

c. **<u>1989 Honda Accord,</u>** NM License 452GDK; male Debtor used unreported alias Robert C. Whitaker to purchase this vehicle and kept it registered in Robert C. Whitaker name. Per CarsForSale <u>http://www//CarsForSale.com</u>, this automobile has a retail value of $2200. Exhibits >>> thru >>>

d. **<u>1988 Chevy truck</u>**, license DWT976; male Debtor keeps registered in unreported alias R.P. Whitaker. Per NADA this is a classic vehicle sought after by Chevy truck collectors; retails ~$5300. Exhibits >>> thru >>>>

e. **<u>1998 Blue GMC Sonoma,</u>** license 457KCZ; Debtors keep registered in unreported alias & previous owners Walter J or Karen Florence name, despite purchasing vehicle nearly a decade ago. This vehicle has a NADA retail value of ~$4275. Exhibits >>> thru >>>

72. Plaintiff begs Court to deny Debtor's attempt to amend original petition to now include the 1998 GMC Sonoma, or any of the vehicles identified above. ~~**In re Lewis 51 B.R. 353 Bkrtcy Court** disallowed Debtor to amend petition stating "*The court dismissed debtor's entire case in order to preserve the integrity of the bankruptcy process... to amend petition would afford her protection of the Bankruptcy Code retroactive to the date on which she filed her petition, while permitting her to escape all of its responsibilities during that time. Amendment would impair the rights of (Debtor's) creditors.*~~"

73. Plaintiff alleges this Court & Plaintiff have vested interest in 4 vehicles listed in lower half of Table ___: 2012 Honda Civic; 2007 Chevy Malibu; 2004 Nisson Maxima; and 2004 Dodge Dakota Club

Pickup truck. Even though Beatrice Medina was never a tenant at Plaintiff's 7300 Welton rental property she fraudulently uses this address for insuring and hiding these 4 vehicles. Exhibits >>> thru >>>>

**Count 9: Debtor's False Oath, Concealment and Fraud Regarding Cash & Other**

74. Plaintiff alleges that Debtors committed multiple counts of false oath, concealment, fraud and larceny when Debtors failed to disclose the following items; Exhibits >>>> updated Schedules B, I, J:

a. $2300 they were in possession on night before filing for bankruptcy, as part of negotiations with landlord that would have stayed debtor's eviction. Exhibit ____ Plaintiff's attorney stating *"Thank you Stanley.. Mrs. Whitaker tells me she has $2300.00 dollars to give you today if they can continue with the lease.. ."* Debtor's hiding $2300 cash is concealment failure to deliver $2300 to Trustee & pocketing the cash is 4th degree felony larceny. ~~NMSA §30-16-1 (A) *Larceny consists of the stealing of anything of value that belongs to another.* NMSA §30-16-1 (D) *Whoever commits larceny when the value of the property stolen is over $500 but not more than $2,500 is guilty of a 4th degree felony.*~~

b. $6600 cash that female embezzled instead of paying rent. Exhibit ____ Transaction Detail Report for Debtor's savings account #[redacted] showing large sums of cash withdrawal months just prior to filing Bankruptcy; Debtors hiding this $6600 cash is concealment. Debtor's failure to deliver the $6600 cash to Trustee is fraud; Debtor's pocketing the $6600 cash instead of delivering it to the Trustee is 3rd degree felony larceny. ~~NMSA §30-16-1 (E) *Whoever commits larceny when the value of the property stolen is over $2,500 but not more than $20,000 is guilty of a third degree felony.*~~

c. $31,200 cash that Debtors, by their own written admission, siphoned off to insiders, male Debtors parents, during the time period 2005-2009; based on Debtor's past track record that the actual amount could be as high -$55K during the years 2005-2013. Exhibits>>> Failure to disclose is concealment and failure to report is fraud. Failing to disclose parents R.P. Whitaker and Fannie Whitaker as recipient of financial aid is also a violation of **Schedule B Line 24** failure to provide *"Customer lists and other compilations containing PII provided to debtors in connection with obtaining a product or service for personal, family & household"*

d. ~~~$85,000 in unreported financial from ABQ Academy that Debtors received; which paid 90% of [redacted] first rate education from grades 7-12 over the six year period 2004-2010. Exhibits >>> Debtors made false oath and misleading statements when they disclosed that they only had no other cash, checking interest or personal property of any other kind. Failing to disclose ABQ Academy as a provider of financial aid is violation of **Schedule B Line 24** failure to provide *"Customer lists and other compilations containing PII provided to debtors in connection with obtaining a product or service for personal, family & household"* Per ABQ Academy rules, the family bears the brunt of paying for their children's education. Exhibits ___ However in this case Debtors, who are supposed~~

~~actual cost of the education;~~ which translates to approximately ~~couple of hundred~~ dollars per year. And that 99% of their daughter[illegible] ~~education cost~~ was paid by 3rd parties. That means that Debtors were ~~able, during~~ the 2005-2010 time period, to pocket ~~~$85,000, moneys~~ that other parents ~~normally spend on their children's education.~~

e. ~$810 cash deposits with PNM and New Mexico Gas Company & refunds of those deposits back to Debtors; and Debtors failed to turn over deposit proceeds to Trustee. ~~Exhibit ___ One count of~~ [illegible] ~~second count of misdemeanor larceny for pocketing &~~ not turning over the ~$400 NM Gas Co. refund to the Trustee. ~~NMSA §30-16-1 (C) Whoever commits larceny when the value of the property stolen is over two hundred fifty dollars ($250) but not more than five hundred dollars ($500) is guilty of a misdemeanor.~~ Plaintiff alleges that Debtor's actions to discard PNM deposit receipt invoices to have destroyed NM Gas Co deposit receipts ~2 weeks after they filed for bankruptcy, constitutes attempted destruction of vital records in violation of U.S.C. §727(a)(3) and U.S.C. §727(a)(4)(d).

f. $68.44 check refund check #[illegible]4275 from Farmers Insurance Group (Exhibit ____ ); Debtor's hiding this check from Bankruptcy Trustee is concealment. Debtor's responsibility to turn over this check to the Bankruptcy Court Trustee. Debtor's failure to deliver this check to Trustee is fraud. ~~NMSA §30-16-1 (B) Whoever commits larceny when the value of the property stolen is two hundred fifty dollars ($250) or less is guilty of a petty misdemeanor.~~

g. That Plaintiff received unreported income and goods from operating a child care facility at Plaintiff's rental property for their great grandniece ~~(female Debtor's sister Christina Padilla's daughter [illegible] daughter)~~ so the granddaughter can could to school, work and make an income. Debtors made false oath & committed fraud by including day care facility operating expenses on Schedule B, I and J; which have a direct impact on "means test".

**Count 10: Debtors False Oath & Fraud Re Remainder of Petition Forms & Schedules**

~~75. Plaintiff avers that both Debtors submitted a fraudulent bankruptcy filing therefore the Court should dismiss petition with prejudice. Some of alleged concealments & frauds are listed below & summarized in Exhibits ___ updated Schedules B, I, J.~~

~~76. Pg 1 of 46: Debtor's declaration that after any exempt property is excluded and administrative expenses paid there will be no funds available for distribution to unsecured debtors. In reality there are enough funds to pay creditors.~~

77. **Ref B1 Pg 1 of 46:** Plaintiff alleges that Debtor's estimated asset value $0-$50K is false; more accurate estimate is $100K - $150K

78. **B1 Pg 2 of 46:** Plaintiff alleges that checkmarks indicating Exhibit D completed and signed by male and female Debtors is false. Actually neither Debtor did signed his Exhibit D.

~~79. B1 Pg 4/6 of 46: Plaintiff alleges that checkmarks indicating Debtors received briefing from credit counseling agency within 180 days before filing petition is false. Debtor received a few minute telephonic counseling on same day as filing of petition and after attorney already prepared all petition forms. Court can confirm that Debtor did not comply with 180 day deadline by reviewing the filed Certificate of Counseling which shows counseling date/time of 23 Aug 2013 2:34PM; which is same day as filing; 2 hrs before attorney e-filed petition. Plaintiff alleges that per Bankruptcy Court Rules if Debtors do not comply with the 180day deadline then it is automatic ground for the Court to dismiss Debtors Bankruptcy petition.~~

80. **Form 6 Pg 9 of 46:** Under the block entitled *type of Liability*, Debtors failed to include taxes, student loans, divorce decree obligations and obligations to pensions and profit sharing. Under the block entitled "state the following", Debtors failed to include Sch-E non-priority amount.

*81.* **Form 6A, pg 10 of 46, Schedule A Real Property** Plaintiff alleges that Debtors made false oath Bankruptcy fraud and concealment when they did not disclose interest in various real properties. ~~Instructions for Schedule A Real Property state: "*List all real property that in which debtor has any legal, equitable or future interest, including all property owned as a co-tenant, community property or in which debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. ... If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim*~~". Plaintiff alleges Debtors have interest in the real property belonging to: male Debtor's Parent's home since he provide $32-54K assistance to parents, including upkeep of this home and male debtor was included in father's will when he passed away; male Debtor's ex-wife; male Debtor's sister Vanessa Whitaker, male Debtor brother Fred Whitaker, male Debtor 3 daughters current & future real property; female Debtor father Arthur Medina and mother Beatrice Medina (and all her aliases); all of male & female Debtor sister, brothers, nieces, grandnieces, nephews and grandnephews and extended family

*82.* **Form 6B, pg 13 of 46, Schedule B Line 19:** Plaintiff alleges that Debtors made false oath Bankruptcy fraud and concealment when they did not disclose interest in class action suit against First Security Bank, who was lien holder for Debtor's 1989 Honda Accord; and attempted destruction of vital documents when Debtors discarded *"Notice of Class Action Suite and Settlement Offer."* ~~Instructions for Schedule B and Line 19 state "*List all personal property of the Debtor of whatever kind...Equitable or future interest...and rights or powers exercisable for the benefit of the Debtor...*~~

83. **Form 6I Schedule I- Current Income:** Plaintiff alleges that Debtor's income needs to be increased by $165 per week ($660/mth) for taking care of a child. Income is based on the $125/wk that Debtor's claimed on the child care they were paying Beatrice Medina for their baby in 2003-2004 timeframe and adjusted for 3% annual inflation rate. Plaintiff alleges now that the "shoe is on the other foot" that this is only equitable; since Debtors previously claimed child care refunds and received payments from their Cafeteria Plan, the Debtors now should be reporting in-kind receipt of income, adjusted for inflation, for operating a child care facility.

84. Plaintiff alleges that Debtors made false oath on Schedule J and states that:

a. Debtor's were operating a child care facility from Plaintiff's rental property. Consequently the Debtors expenses to be reduced by the amount allocated to child care facility operations such as: paying for food, diapers & expendables, toys, use of house, utilities, rent, cleaning, etc.

b. Schedule J Line labeled "Food" needs to be reduce from $400/mth to $200 to discount for child's food for running day care center.

c. Line labeled "Insurance-Auto" needs to be reduced from $80/mth to zero since male Debtor's brother Fred Whitaker is the named insured for the 2004 Honda Accord; and as such is responsible for insurance payments.

85. Plaintiff alleges that Debtors made false oath when they placed a checkmark on B7, Pg 36 or 46, in the box "None" next to the paragraph "~~*If the debtor resides or resided in a community property state, including New Mexico, within the 8 year period immediately preceding the commencement of this case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.*~~"

*a.* ~~Since Debtors filed joint petition they in affect are declaring that they are married. Therefore,~~ if ~~Debtors were truly married they would have listed each other as spouses in this section. By declaring "None" Debtors are indicating that they are not married, which contracts their Joint Petition, and is automatic basis to dismiss Debtor Bankruptcy petition for failure to meet joint filing status.~~

b. Male Debtor committed fraud and false oath when he failed to disclose he was previously married to and subsequently divorced from Sandra J. Kosinski; post marriage to male Debtor she assumed husband's surname and became known as Sandra J. Whitaker. The couple was married on 8 June 1977; divorced on 20 Sept 1986. Exhibits ____ thru ____.

86. On **Schedule F failed to disclose** Dish Networks as a creditor with whom Debtors have an unpaid balance of $539; which was written off by creditor

**~~Count 12: Debtor Taxes Are Not Dischargeable Debts~~**

87. ~~Plaintiff alleges that over the past decade Debtors filed fraudulent tax returns, willfully attempted~~ to evade taxes; and provided misleading information on petition regarding their tax debt. Therefore, Debtors past due taxes are not dischargeable debts and should not be used in Debtors means test or anywhere in bankruptcy consideration of dischargability of other debts. Recommend instead that Court view fraudulent tax filings as other examples of Debtor false oath. If Debtors attempted to deceive IRS and NM taxation Departments, how readily would Debtors attempt to deceive Bankruptcy Court?

88. Section 523(a)(1)(C) provides that debts for taxes relating to fraudulent returns or for which the debtor *"willfully attempted in any manner to evade or defeat such tax"* are nondischargeable. *Cassidy v. Commissioner*, 814 F.2d 477 (7th Cir. 1987). And Sections 26 U.S.C. 7201-7203 deals with tax fraud

89. Plaintiff alleges, based in part on IRS tax returns, that Debtors are not married. If Debtors claim to be married then they filed separate, fraudulent, Federal and NM tax returns for years 2003-2009 (Exhibits ____ thru ____) and on their corresponding application & financial aid request at ABQ Academy; and possibly on their 2010-2013 returns.

a. Exhibits >> and >> 2009 and 2007 Debtors filed separate tax returns. Female Debtor lists status as *Head of Household* using unreported unmarried alias Elayne G. Medina, which is variant of her maiden name Elaine G. Medina. And correspondingly, male Debtor should have filed returns as *Single*. Instead male Debtor files using unreported alias Robert C. Whitaker; status *married filing separately*; with purported spouse named Elayne Medina. If Debtors were married female spouse's name would have been something like Elayne Whitaker; her filing status would have to be *married filing separately*, not as head of household. The 2009 & 2007 returns show Debtors are not married; they filed fraudulent separate returns to take advantage of a lower tax bracket; and they avoided taxes.

b. Exhibits >> and >> 2008 Debtors filed separate tax return. Female Debtor lists status as *Head of Household* using unreported unmarried alias Elayne G. Medina. And correspondingly, male Debtor should have filed returns as *Single* with 1 exemption. Instead male Debtor files returns using unreported alias Robert C. Whitaker filing status *married filing separately* claiming 2 exemptions, one for self and another for purported spouse named Elayne Medina. 2008 tax returns show Debtors are not married; they falsely claimed more exemptions then they were entitled to; and they used wrong filing status & lower tax bracket to fraudulently avoid paying taxes.

c. Exhibits >> and >> 2006 Debtors filed separate tax returns. Female Debtor lists status as *Head of Household* using unreported alias Elayne MedinaWhitaker and claiming 2 exemptions, one for self and one for daughter. But male Debtor using unreported alias Robert C. Whitaker files as *married filing jointly*, claims 2 exemptions; one for self and one for purported spouse named Elayne Medina. ~~2006 tax returns show Debtors falsely claimed more exemptions then they were entitled to; they used~~

~~wrong filing status & lower tax bracket to fraudulently avoid paying taxes; and female debtor created~~ ~~a~~ fictitious surname MedinaWhitaker.

d. Exhibits >> and >> 2005 Debtors filed separate tax returns. Form 8879 shows female Debtor filing under the unreported alias Elayne Medina; and presume from pattern of filing using status *Head of Household.* But male Debtor using unreported alias Robert C. Whitaker files as *married filing separately*; purported spouse named Elayne Medina, which is evidenced by her SSN on the tax form. 2005 tax returns show Debtors are not married; they falsely claimed more exemptions then they were entitled to; and they used wrong filing status & lower tax bracket to fraudulently avoid paying taxes.

e. Exhibits >> and >> 2004 Debtors filed separate tax returns. Female Debtor lists status as "*Head of Household*" using unreported alias Elayne G. Medina, which is an alias of her maiden name Elaine G. Medina. And male Debtor using unreported alias Debtor Robert C. Whitaker files as *Single*; no spouse is named, and no spouse SSN is listed on the form. Clearly the 2004 IRS tax returns show Debtors are not married; may be the closest that Debtors have yet to submitting an accurate filing; and should be used as a baseline for comparing all other tax returns and filings.

f. Exhibits >> and >> 2003 Debtors filed separate tax returns. Female Debtor lists status as "*Head of Household*" using unreported alias Elayne G. Medina, which is an alias of her maiden name Elaine G. Medina. But male Debtor using unreported alias Debtor Robert C. Whitaker files as *married filing separately*. Male Debtor's committed multiple counts of tax fraud: (a) claiming status as *married filing separate return* to falsely take advantage of a lower tax bracket (b) claiming more exemptions than they were entitled to: one for self and the 2nd for child named [redacted], which is also claimed on female Debtor's tax return; and (c) creating a fictitious alias name, [redacted] for child who is always goes by [redacted] as shown on all of female Debtor's tax returns and EIC Earned Income Credit Child Information Forms.

90. Plaintiff begs this Court to scrutinize both Debtors tax returns for fraud and tax evasion; and to report both Debtors to the U.S. District Attorney, the IRS and NM Taxation & Revenue Department for ~~potential Debtor tax fraud and tax evasion.~~

## ~~Count 13: Debtor School Loans Are Not Dischargeable Debts~~

91. ~~Plaintiff alleges that Debtors have not shown any good will attempt at paying their school loans~~ in ~~the past 20 years, despite years of considerable personal economic wealth & charity from other sources. Therefore school debts are not dischargeable debts and should not be used in means test calculations.~~

92. The second factor[10] in determining whether student loan is a dischargeable debt is the "good faith" test. *The debtor must demonstrate that he or she has made a good faith attempt to make payments on the loan... In addition to examining the payment history of the loan, the court will examine such factors as: efforts to get and keep a job; present employment; job history; whether the debtor's education and skills are being used to the best advantage; and attempts by the debtor to live within his or her means. If the debtor fails to meet his burden on this factor, the debt is excepted from discharge.*

**Count 14: Debtor Medical Expenses are Not Dischargeable Debts**

93. Plaintiff alleges that medical expenses listed in Bankruptcy petition forms are not the debts of either Debtor; nor the responsibility of either Debtor; and that Debtor's have provided no proof that listed medical expenses are Debtor's debts. On the contrary all listed medical creditors have out of state addresses that have no relationship to Debtors. None of the medical expenses are dischargeable debts nor should any aspect of these medical expenses be used in means test calculations. By listing debts that are not their responsibility, Debtors provided misleading statements, committed false oath bankruptcy fraud.

94. **Citing In re Scott**, "*information provided by a debtor... should not only be complete but truthful so that the Court and other parties in interest can reasonably rely upon the data contained therein.*"

**Count 15: Debtor's Fail Means Test**

95. Plaintiff alleges that Debtors have failed the means test and provides his estimate of Debtor income, expenses and assets in the attached Excel spreadsheet Exhibit. Therefore, this Court should dismiss Chapter 7 with prejudice.

**Count 16: PERA and Pension Plans are Not Exempt Assets**

96. Plaintiff alleges Debtors committed false oath, bankruptcy fraud, misleading statements and destruction of vital records when on Schedule B L-12 they listed the total value of interest in IRA, ERISA, Keogh or other pension or profit sharing plans as: single PERA account $26, 314.89. But Debtors undervalued the plans reported; failed to disclose all of their pension plans; and concealed cash from pension plans they already cashed out. In reality, Debtors have multiple retirement plans with a combined value at nearly $530,000 including Social Security; and Debtors have already cashed out from other retirement plans an unreported additional amount of ~$8348. And even after filing for bankruptcy, Debtors continue to fraudulently convert cash into purportedly protected assets instead of paying their debts. Supporting financial figures are gleamed from Debtor's own records. Exhibits >>>>> thru >>>>>.

---

[10] Gleissner, Richard "The Discharge of Debt"

a. Debtors undervalued PERA account by ~$69,000; accurate PERA value is ~$91,681 Exhibits >>>>

b. Debtors have an unreported Retiree Health Care Plan/Account to which male Debtor and employer make bi-weekly contributions; and which has a current estimated values of ~$7453. Exhibits >>>

c. Debtors have an unreported TSA VALIC pension account valued ~$1210. Exhibits >>>

d. Female Debtor has an unreported pension account from employment at the NM Fairground. Exhibit

e. Female Debtor already cashed in approx $6569 Welles Fargo Retirement from her Southwest Medical Association Profit Sharing & Salary Def Plan   Exhibit

f. Female Debtor already cashed in approx $1000 from her 401K retirement fund from her employer Southwest Medical Associates. Exhibits

g. Female Debtor already cashed in approx $779 from her 401K plan from her employer NM Neurological Associates. Exhibit

h. Each Debtor has ~$200,000 life time pension income from Social Security

97.   Plaintiff alleges that there is no statute exempting from garnishment or bankruptcy court proceedings the Debtors VALIC pension account, 401K or Retiree Health Care Plan accounts; especially when Debtors committed multiple counts of fraud.

98.   Plaintiff alleges Debtors PERA is not exempt property; do not meet the requirement for exemption; and the court should take charge of funds coming into and going out of these retirement plans by (a) liquidating this PERA and other plans to payoff Debtor debts, including paying Plaintiff's Metro Court Judgment; (b) stopping further Debtor contributions to these plans and garnishing those proceeds to pay down judgment; and (c) garnishing future plan distributions to pay down the judgment.

99.   Plaintiff asserts that the Bankruptcy Court has jurisdiction over Debtor's PERA account, self-directed retirement accounts and cash refunds from retirement accounts; especially where Debtors committed bankruptcy fraud, fraudulently transferred assets into pension & self-directed accounts; and concealed cash disbursements from these accounts.

100.   Plaintiff avers that New Mexico pension for public employees is governed by the Public Employees Retirement Act (PERA). On the surface it appears that NM PERA is not subject to process of service and are protected assets in bankruptcy proceedings. NMSA (1978) §10-11-135 states: *Except as provided in Sections 10-11-136 and 10-11-136.1 NMSA 1978, none of the money, pensions or other benefits mentioned in the Public Employees Retirement Act shall be assignable either in law or in equity or be subject to execution, levy, attachment, garnishment or other legal process.* Sections §10-11-136 and 10-11-136.1 are not applicable to this case since they deal with divorce, alimony and child support.

101.   Plaintiff alleges however that PERA is not 100% protected from bankruptcy action; and that Federal Bankruptcy law trumps state PERA law. NMAC (1978) §2.80.2100.6 "*The objectives of this rule are to establish standards and procedures for refunding member contributions and to identify federal*

[illegible] *Section 10-11-135, NMSA 1978, PERA retirement accounts are not subject to legal process under other state laws, except for division of a community interest in such accounts as provided in Section 10-11-136 NMSA 1978 or in enforcement of child support obligations as provided in Section 10-11-136.1 NMSA 1978... however, federal laws pre-empt the provisions of the Public Employees Retirement Act and 2.80.2100 NMAC 3 PERA will honor the federal action if the account is in pay status, i.e. if the member has terminated employment and requested a refund of contributions, or if a pension is payable. If the federal action is applied against a refund of member contributions, non-tax deferred contributions shall be paid before tax-deferred contributions. (1) IRS notices of levy for unpaid taxes. (2) Orders by a U.S. bankruptcy court. (3) Orders of garnishment for fines or restitution by a federal court in criminal case."*

102. Plaintiff alleges that decision whether a pension plan is an exempt from Bankruptcy proceedings is governed not just by the NM PERA statutes, but must also take into account the totality of NM Statutes and Federal Bankruptcy Laws; tempered by debtor's actions & intentions. And that the object of the exemption statutes NMSA (1978) §10-11-135, is to allow for legitimate exemptions in certain funds, but that it does not allow a debtors to find shelter in these statutes by perpetrating a fraud upon their creditors.

*103.* **<u>Dona Ana Sav. and Loan Ass'n, F.A. v. Dofflemeyer</u> 115 N.M. 590, 855 P.2d 1054 N.M.,1993** "*We hold that the object of the exemption statutes... is to allow for exemptions in certain funds, but that it does not allow a debtor to find shelter in these statutes by perpetrating a fraud upon his or her creditors. ...The legislature did not intend "that these generous provisions should be prostituted to the encouragement of extravagance, and the evasion of just indebtedness...*" And that the "*Uniform Fraudulent Conveyance Act, NMSA 1978, §§ 56–10–14 to –25 voided transfers made as a result of either constructive or actual fraud... Accordingly, the noninclusive enumeration of factors contained in the statues are to be considered when determining whether the funds that ordinarily would be exempt from attachment should be set aside as the result of a voidable transfer.*" And that "*Our statutes were not meant to be construed in isolation, but in conjunction with the general body of the law as a whole...The fact that different statutes are found in different parts of our New Mexico Statutes Annotated does not mean that they cannot or should not be construed together. When two statutes can be construed together to preserve the purposes to be obtained by both, they should be so construed as long as no contradiction would result. State ex rel. State Park & Recreation Comm'n v. New Mexico State Auth., 76 N.M. 1, 29, 411 P.2d 984, 1004 (1966). We believe that the Uniform Fraudulent Transfer Act and the exemption statutes should be construed together to obtain the purposes of both*".

**<u>Count 17: Debtors Concealed, Destroyed or Attempted Destruction of Vital Records</u>**

• 104. Plaintiff alleges Debtors committed false oath and fraud by destroying or attempting to destroy evidence that would reveal Debtor's identity, addresses, assets & creditors; by discarded all their records just prior to or at time of filing for bankruptcy in violation of Sections U.S.C. §727(a)(3) and §727(a)(4)(D). These records have a direct bearing on the case at bar. Therefore bankruptcy petition should be dismissed with prejudice.

105. Plaintiff's avers that the majority of evidence presented as Exhibits comes from the trash that tenants discarded. Exhibits .....Through sorting of the trash Plaintiff is now able to reconstruct many of Plaintiff's finances, assets & frauds over the past 20 years. Plaintiff requests that Court view Debtor's discarding these documents as prima fascia evidence that Debtor's intended to destroy vital records in their Chapter-7 Bankruptcy case; such action is a criminal offense under the Bankruptcy laws.

Count 17: Debtors Have History of Fraudulent Filings

106. Plaintiff alleges that each Debtor/Defendant has a track record of false oath, fraudulent filings & criminal activity that this Court needs to be aware of and take into consideration when making a decision regarding the truthfulness, the completeness and integrity of the Bankruptcy Petition. And it is Plaintiff belief that if this Court uses a microscope point of view to scrutinize the Bankruptcy petition, forms, schedules it will independently arrive at the conclusion that Debtors filed a fraudulent petition with the intent to deceive this court; obtain free rent and free utilities at the expense of the Plaintiff defrauded the Creditors identified in the petition and other creditors not disclosed, but for which, Debtors are liable for.

107. Throughout the pleading Plaintiff has discussed criminal acts and fraud that Debtors perpetrated; now he presents remainder of Debtor fraud that has been uncovered and have bearing on this case.

108. Plaintiff alleges that female Debtor committed false oath and fraud when she applied for food stamps. Exhibits ...If Debtors claim to be married then female Debtor committed fraud by using her maiden surname on her application and received approval in the amount o$232-256/mth in food stamps; all the while making false oath by claiming indigence, that she was unemployed; that she & daughter were living alone at the rental property at 615 McCloskey Dr. SW, ABQ, NM 87121; and that she alone was paying rent and utilities. Exhibits.... And she also fraudulently applied for and received Low Income Home Energy Assistance Program (LIHEAP) for utilities. Exhibits

109. Plaintiff alleges that, since female Debtor filed fraudulent application and received unwarranted food stamps thru the US Postal Service, she also committed mail fraud, which is a Federal criminal offense; reportable to the US Postal Inspector.

110. Plaintiff alleges false oath, concealment and fraud when in 2005 female Debtor applied for, was granted and used a Notary Public commission using female Debtor's unreported alias Elayne G. Whitaker. By using so many aliases concurrently and those that are different from official government

records like NM driver's license and SSA, female Debtor perpetrated fraud upon NM Secretary of State (SOS) when she applied for Notary Public Commission; fraud upon the people that she notarized document for; and fraud upon the creditors and & government agencies that put trust in the validity of the Notary Public seal. Actions of the Notary are governed by the NM Notary Act NMSA §14-12A-1; §14-12A-13; §14-12A-2 (H); §14-12A-2 (K); §14-12A-2 (O) ,, §14-12A-4(C); §14-12A-20; *§14-12A-21;* §14-12A-26 (C) ; §14-12A-9(B). Female Debtor, as Notary Public, continued to violate NM statues by not updating her addresses with SOS & Surety Bond Company during years that her commission was in force. Plaintiff begs this Court to report female Debtors to the U.S. District Attorney, NM SOS and NM District Attorney regarding female Debtor violations of and prosecution under NM Notary Public statutes.

111. Plaintiff alleges that Debtors committed criminal fraud and concealment upon this court, the original vehicle owners, creditors and upon NM MVD by intentionally keeping, for ten years, the Sonoma vehicle license plate 457KCZ and vehicle registration in the name of the original owners, Walter J. Florence or Karen Florence; as evidenced by Exhibit >>> , which is a certified copy of the 2013 NM MVD vehicle registration for this GMC Sonoma. Violation of NMSA MVD statutes are criminal offenses. NMSA *§66-5-38 clearly states that "Making false affidavit is perjury.* By keeping the GMC Sonoma license and registration in the Florence's name, the Debtors for 10 years intentionally hid this asset under someone else's name; that could not be traced under their name or any of their aliases.

**<u>Count 18: Debtor's Did Not Exercise Other Options; Including 3rd Party Liability</u>**

112. Plaintiff alleges that Debtors did not exercise other options to resolve financial issues with Creditors, prior to and in lieu of filing for Bankruptcy; options that Debtors could have exercised to prevent getting into debt in the first place: not embezzling cash; not transferring cash & assets to insiders; not taking on someone else's debt's & responsibilities; not falsifying tax returns; not purchasing so many vehicles and assets. And are a number of options available to pay off their debts: getting a job, there is no reason female Debtor isn't or can't work; cashing out portion of pension plan; sale of vehicles; using unreported cash and income; using money saved by not paying child's schooling; having insiders return portion of cash & assets transferred to them; having insiders that have 3rd party liability pay for debts.

113. Plaintiff offered tenants opportunity to stay in rental dwelling and payoff past due amounts thru long term payments. However, tenants failed to show up at negotiation meetings with their attorney & deliver the $2300 cash the night preceding filing petition; all of which that would have secured the deal.

114. Plaintiff alleges Debtors have and had other options to pay down or pay off creditors:

a. $1100 rental damage deposit; $810 unreported PNM & gas deposit refund

b. $1300 unreported cash kickback (referral fees) from GMC Quality Dealerships

c. $2300 unreported cash Debtors had night before filing for bankruptcy

d. $6000 unreported cash Debtors embezzled months before filing for bankruptcy

e. $31,200 -$55,000 unreported cash siphoned off to insiders (parents)

f. Sell off Debtors 5 of 6 vehicles valued at ~$29,000 or obtain loans against vehicles

g. Annual IRS and NM tax refunds that Debtors received over the past decade; including 2013 refunds

h. ~ $6569 cash female Debtor received from her Welles Fargo Retirement fund ; ~$1000 cash from female 401K retirement fund ; ~$779 cash female Debtor received from her 2nd 401K plan

i. ~$85,000 financial aid Debtors received from Albuquerque Academy

j. Cash out part of the ~$100,000 PERA and retirement funds; stop making PERA contributions

k. Receive assistance from family members and friends. Quid pro-quo, if Debtors were previously taking care of other family members; at time of need why are not family members helping Debtors?

l. Place a 3rd party liability against Debtors friends and family that use the Plaintiff's rental property and addresses even though they are not on the lease to pay down the $8402Metro Judgment

m. File a claim against Debtor's renters insurance for unpaid rent, court costs and damages.

n. Cash in the $68.44 Farmers Group Ins check

**Count 19: Bankruptcy is Appeal to Metro Court Judgment**

115. Plaintiff alleges that Debtors are illegally using the Bankruptcy Court as a means to appeal the restitution judgment ordered by the Metropolitan Court. Bankruptcy petition is an immediate appeal from the lower Court judgment.

116. Plaintiff avers that since Debtors did not show up at the Metro Court Trial. they did not exercise all of their lower court options so they forfeit their legal right to appeal. If Debtors did not express enough interest to show up in Metro Court on the day of trial, then they can't be allowed to use higher Courts to protect their financial interests and assets. This Court should exempt Metro Court Judgment and lift the stay so Plaintiff can move on with collection of the Judgment.

117. Federal Courts Judicial Center[11]: *stay is the postponement or halting of a judicial proceeding or judgment. A motion for a stay pending appeal seeks to delay the effect of a district court order or agency order until a U.S. court of appeals decides whether that order is valid.* Plaintiff avers that this Federal Court definition of appeal is analogous to what Debtors are trying to pull re the Metro Court Judgment.

**Summary**

Wherefore, Plaintiff has shown that Debtors did not exercise alternatives to Chapter 7, submitted a fraudulent bankruptcy petition, do not pass the means test, committed multiple acts of false oath, fraud & concealment and attempted destruction of vital records this Court should dismiss Creditor's petition and exempt Plaintiff's Metro Court Judgment. Plaintiff further asks that Court award cost, fees and

damages to Plaintiff including but not limited to compensation for the Plaintiff's enormous amount of time and energy spent in researching this case, disclosing this fraud, preparing, filing and presenting this complaint; protecting himself from a fraudulent Bankruptcy petition; and for the emotional drain, stress and impact to his health that that Debtor's petition has brought upon him and into his life. That the Court take appropriate action against Debtors for filing fraudulent Bankruptcy petition. And Plaintiff begs this Court to report both Debtors to the U.S. District Attorney and appropriate government agencies named in the body of pleading regarding additional fraud Debtors perpetrated on the IRS, NM TRD, MVD, Medicaid, Food Stamp and Unemployment programs.

Respectfully Submitted by

Stanley Z. Peplinski, Pro Se
11220 Country Club DR. NE
Albuquerque, NM 87111
(505) 362-2731

**CERTIFICATE OF SERVICE**

I certify that I mailed a copy of the foregoing document to the following parties via the United States Postal Service (USPS) First Class mail, postage pre-paid, on this 10th day of December 2013.

Debtor's Attorney,
Peter F. Staiti
320 Gold Ave SW Suite 1400
Albuquerque, NM 87102

And that I am unable to mail copies directly to the Debtors since they no longer reside at 7300 Welton, NE, ABQ, NM 87109, which is Debtor's address on file with this Court; and that Debtor's have failed to provide an updated residence address.

Stanley Z. Peplinski