UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: ROBERT WHITAKER and
ELAYNE G. MEDINA-WHITAKER                    Case No. 13-11395

        Debtor.

---

STANLEY Z. PEPLINKSKI.

        Plaintiff,

v.                                            Adv. No. 13-01068

ROBERT WHITAKER and
ELAYNE G. MEDINA-WHITAKER

        Defendants.

## MEMORANDUM OPINION AND ORDER
## SANCTIONING DEFENDANTS

By an order entered May 27, 2015, the Court directed both Defendants, Robert Whitaker and Elayne Medina-Whitaker, to show cause why they should not be sanctioned for bad faith conduct in connection with settlement negotiations (the "Order to Show Cause"). *See* Docket No. 73. After considering the evidence and arguments presented at the various show-cause hearings, the Court will issue a sanction against Defendants in the amount of $1,500.

### FINDINGS OF FACT

About two years ago, Plaintiff filed an adversary complaint objecting to Defendants' discharge. The parties voluntarily agreed to the mediation of their dispute. By an order entered November 10, 2014, the Court directed the parties to appear for mediation on December 3, 2014 and to participate in the mediation process in good faith. The parties appeared as directed and reached a settlement on or about December 17, 2014. Under the settlement, Defendants agreed

to pay Plaintiff $9,000, contingent on Mr. Whitaker's ability to borrow that amount from his retirement account with the Public Employees Retirement Association of New Mexico ("PERA"). Defendants agreed to pay the funds to Plaintiff within seven days of obtaining such loan. Counsel for Defendants ("Counsel") was to prepare the settlement documents.

Defendants represented to Plaintiff and to their Counsel that they expected to receive an answer from PERA by January 5, 2015 as to whether they could obtain a loan from Mr. Whitaker's retirement account. That day, Plaintiff sent an email to Counsel requesting the settlement documents and the funds Defendants agreed to pay. Plaintiff was eager to receive the funds because he was facing imminent foreclosure. Counsel responded via email on January 6, 2015, stating "Mr. Whitaker expects to get the answer on his loan this week. Once I get it I will let you know. All we really need to do is file an order of dismissal. I will keep you advised."

After that point, Defendants were essentially unreachable. Counsel called Defendants numerous times in the first two weeks of January 2015 to follow up on the status of the PERA loan, but they did not answer. Mrs. Medina-Whitaker returned one such phone call, but Counsel was out of the office and she did not call again. Counsel also sent Defendants two letters dated January 26, 2015 and February 3, 2015, to which they did not respond. Based on this failure to communicate, Counsel filed a motion to withdraw from representing Defendants on February 12, 2015. By an order entered May 15, 2015, the Court approved Counsel's request to withdraw.

Around the same time, Plaintiff filed a motion to enforce the settlement agreement. The Court held a hearing on that motion on May 27, 2015. At the hearing, Mrs. Medina-Whitaker testified that she and/or her husband made several efforts to obtain a loan from Mr. Whitaker's PERA account. She testified further that when she and/or her husband called PERA to apply for the loan, PERA informed them that early withdraws or loans are only permitted for certain

purposes such as to pay medical bills. After reviewing, with the parties' consent, the PERA website and handbook, it was readily apparent that it is not possible to obtain early withdrawals or loans from PERA before retirement or termination of employment, regardless of why the funds are needed. After being so advised, Mrs. Medina-Whitaker revised her testimony to state that her husband may have contacted his human resources department rather than PERA, and that he may have obtained information about a traditional 401K retirement account. Mr. Whitaker was not present at the May 27, 2015 hearing.

Based on the contradictions between the PERA website and handbook and Mrs. Medina-Whitaker's representations, the Court issued an order directing both Defendants to appear at a hearing on June 10, 2015 at 9:30 a.m. to show cause why they should not be sanctioned for bad faith conduct in connection with the settlement. Mrs. Medina-Whitaker and her former Counsel appeared at the June 10, 2015 hearing, but Mr. Whitaker did not appear. Mrs. Medina-Whitaker testified that she did not receive the Order to Show Cause or Counsel's letters because she had trouble receiving mail at her current address. She further testified that she often had to pick up mail that was being held at a post office in the northwestern quadrant of the city addressed to where she lived in the southwestern quadrant. This testimony was not credible. A letter from a United States Postal Service supervisor, admitted in evidence at the July 30, 2015 hearing, confirms that mail directed to Defendants' current address could not legally be held at a post office across town. The letter further states Defendants never reported any issues receiving mail at their current address. In addition to asserting she could not receive mail, Mrs. Medina-Whitaker testified that she called Counsel about ten times between January 2015 and May 2015.

Because Mr. Whitaker was unavailable to testify at the June 10, 2015 hearing, and because Plaintiff requested Mrs. Medina-Whitaker's phone records to impeach her testimony, the

3

Court continued the show cause hearing until July 15, 2015 at 1:00 p.m. The Court directed Mrs. Medina-Whitaker to either provide copies of the billing statements for her cell phone to chambers staff or file a statement of record explaining why she could not obtain them by June 26, 2015. Mrs. Medina-Whitaker did not provide the statements or file an explanation of record. She sent an email to chambers staff on June 29, 2015 stating she was waiting on phone records, which was not sufficient to comply with the Court's directive. When chambers staff followed up with Mrs. Medina-Whitaker to obtain the name of her cell phone carrier so that Mr. Peplinski could instead subpoena the records, she never responded.

Defendants inadvertently appeared for the continued show cause hearing one day early. The Court once again continued the show cause hearing until July 30, 2015 because Mr. Whitaker could not arrange to miss work the next day. Defendants did not appear at the July 30, 2015 show cause hearing.

Based on the foregoing, the Court finds that Defendants engaged in bad faith conduct in connection with the settlement agreement. Defendants may have initially believed Mr. Whitaker could obtain a loan from his PERA account to pay the settlement amount. However, they either discovered such contingency could not be met shortly after December 17, 2014, or they never researched it. Defendants nevertheless created the impression that they were working towards obtaining PERA funding, informing Counsel and Plaintiff that they expected an answer from PERA during the week of January 5, 2015. Defendants then refused to communicate with Plaintiff or Counsel until almost six months later when Plaintiff filed the motion to enforce the settlement agreement.

Plaintiff did not incur any legal fees as a result of Defendants' bad faith conduct, but he was harmed in other ways. He was counting on the settlement funds to save his home from

4

foreclosure. The foreclosure proceeding took place in February 2015. Because Defendants did not execute any sort of promissory note resulting from the settlement, Plaintiff was unable to obtain a loan against the settlement funds. Plaintiff missed work on multiple occasions to attend hearings, and to gather evidence to impeach Mrs. Medina-Whitaker's statements about her mail issues. Finally, Plaintiff experienced stress and anxiety from attending multiple hearings and wondering whether he would receive the settlement funds.

## DISCUSSION

Plaintiff seeks sanctions in the amount of $3,000 and incarceration of Defendants for 30 days based on their conduct in connection with the settlement agreement. Bankruptcy courts have "inherent power ... to sanction abusive litigation practices." *Law v. Siegel,* 134 S.Ct. 1188, 1194 (2014) (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375-376 (2007)). The Tenth Circuit has pointed to 11 U.S.C. § 105(a) as the basis for such power, which provides that the bankruptcy court may "tak[e] any action or mak[e] any determination necessary or appropriate ... to prevent an abuse of process." *See In re Courtesy Inns, Ltd. Inc.,* 40 F.3d 1084, 1090 (10th Cir. 1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power" to issue sanctions); *In re Thomas,* 2009 WL 3241288, *3 (10th Cir. 2009) (affirming the Bankruptcy Appellate Panel's conclusion that a "bankruptcy court had inherent, discretionary authority under 11 U.S.C. § 105(a) to impose sanctions for [appellant's] pattern of bad faith and abusive conduct in the adversary proceeding").

Certain rules, such as Fed.R.Bankr.P. 9011,[1] provide a further basis for sanctions. "When there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Bankruptcy] Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Courtesy Inns, Ltd. Inc.,* 40 F.3d at 1090 (quoting *Chambers v. NASCO, Inc.*, 501 U.S.

---
[1] That rule allows bankruptcy courts to sanction litigants who file baseless or false pleadings.

5

32, 50 (1991)). Otherwise, the Court may rely on its inherent authority and/or its authority under § 105(a). *Id.*

Courts have considerable discretion in fashioning an appropriate sanction. *See LaFleur v. Teen Help,* 342 F.3d 1145, 1149 (10th Cir. 2003) (reviewing for abuse of discretion district court's imposition of sanctions under its inherent powers); *Eisenberg v. University of New Mexico,* 936 F.2d 1131, 1136 (10th Cir. 1991) (acknowledging the need to give trial courts "broad latitude in fashioning sanctions"). Although the Tenth Circuit has not specifically addressed the current fact situation, it has set forth various factors governing the imposition of sanctions in situations involving discovery abuses, Rule 11 violations, and fee awards. Factors governing those situations, and which are also relevant here, include: (1) the degree of prejudice to the opposing party; (2) the amount of interference with the judicial process; (3) the degree of bad faith and/or the culpability of the offending party; (4) ability to pay; and (5) the minimum amount necessary to deter future abuses. *Farmer v. Banco Popular of North America,* --- F.3d ----, 2015 WL 3956172, *9 (10th Cir. 2015) (identifying factors to consider when issuing a fee award for abusive litigation practices); *Quarrie v. New Mexico Inst. of Min. & Tech.,* --- Fed.Appx. ----, 2015 WL 4478205, *2 (10th Cir. 2015) (identifying factors relevant to imposing the sanction of dismissal under Fed.R.Civ.P. 41(b)); *White v. General Motors Corp.*, 908 F.2d 675, 684–85 (10th Cir.1990) (identifying factors relevant to imposing sanctions under Rule 11).

In this case, Defendants acted in bad faith by creating the impression they were working on determining whether they could obtain a loan from Mr. Whitaker's PERA account when in reality, they either knew it was impossible or they never researched it. Such bad faith caused Plaintiff considerable prejudice. Plaintiff was counting on the settlement funds to save his house from foreclosure. Although it appears that Plaintiff could not have avoided foreclosure if he

6

knew about Defendants' inability to meet the funding contingency sooner, he would have avoided a considerable amount of stress stemming from the uncertainty and time consuming efforts to enforce the settlement. Plaintiff was required to miss work on numerous occasions to gather evidence and attend various show cause hearings. Further, Defendants' conduct undermined the settlement process and delayed resolution of the adversary proceeding by at least six months. Defendants' false assurances that they expected to hear back from PERA regarding funding during the week of January 5, 2015, and their subsequent failure to communicate with Counsel, demonstrates a fair degree of culpability.

The Court is troubled by Defendants' behavior. However, incarceration is not appropriate under the circumstances,[2] and the Court is not convinced Defendants are able pay a $3,000 sanction. Defendants' schedules show negative monthly income of $789.00, they are living with family members, and Ms. Medina-Whitaker is not currently working. The Court concludes a more appropriate sanction for Defendants' bad faith conduct in connection with settlement is $1,500, payable in three monthly installments of $500.

WHEREFORE, IT IS HEREBY ORDERED:

1. Defendants must pay to Plaintiff $1,500 as a sanction for Defendants' bad faith conduct in connection with settlement (the "Sanction Award") as follows:

> First payment of $500 due on or before **September 14, 2015**.
> Second payment of $500 due on or before **October 14, 2015**.
> Third payment of $500 due on or before **November 16, 2015**.

---

[2] Bankruptcy courts can order incarceration to coerce a bad actor into complying with a court order, but they cannot order incarceration as a punishment for previous bad acts. *See In re Tate,* 521 B.R. 427, 440-441 (Bankr. S.D. Ga. 2014) (providing an in-depth analysis of the circumstances under which bankruptcy courts can order incarceration). In this case, the sanction is not coercive.

2. If Defendants miss any such payment(s), the entire balance of the Sanction Award will become immediately due and the Court will, at Plaintiff's request, issue a judgment against Defendants for the unpaid balance of the Sanction Award.

3. Any amounts Defendants pay in connection with the Sanction Award will be credited towards Plaintiff's recovery in the adversary proceeding, should he end up recovering a judgment on his amended complaint.

4. The Court will conduct a scheduling conference with respect to Plaintiff's amended complaint (Docket No. 51) on **September 2, 2015** at **1:30 p.m.** in the Sandia Courtroom, Thirteenth Floor, Dennis Chavez Federal Building and United States Courthouse, 500 Gold Ave. SW, Albuquerque, NM. Parties may appear at the scheduling conference by telephone by contacting chambers staff with such a request at least one business day in advance.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: August 14, 2015

Copy to:

Stanley Peplinski
11220 Country Club Dr. NE
Albuquerque, NM 87111

Elayne Medina Whitaker
Robert Whitaker
6225 Dennison Rd. SW
Albuquerque, NM 87121