## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:  ROBERT WHITAKER and                              No. 7-13-11395 JA
ELAYNE G. MEDINA-WHITAKER,

 Debtors.

STANLEY Z. PEPLINSKI,

 Plaintiff,

v.                                                  Adversary No. 13-1068 J

ROBERT WHITAKER and
ELAYNE G. MEDINA WHITAKER,

 Defendants.

### <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court following a trial on the merits of this adversary

proceeding seeking denial of discharge under 11 U.S.C. § 727 and non-dischargeability of debt

under 11 U.S.C. § 523.  Plaintiff Stanley Z. Peplinski and Defendants Robert Whitaker and

Elayne G. Medina Whitaker[1] appeared at the trial, *pro se.*  Plaintiff's objections to discharge are

based on Defendants' alleged failure to list all aliases on their bankruptcy petition, alleged

omissions and misrepresentations in Defendants' schedules, and alleged failure to maintain

records.  Plaintiff also seeks to have a judgment for restitution he obtained against Defendants

before the fling of their bankruptcy petition declared non-dischargeable.  For the reasons

explained below, the Court concludes that although Defendants' failure to list all variations of

their names on the Petition, and failure to retrieve and preserve the papers and records

---

[1] One of the main issues in this adversary proceeding is Defendants' use of variations of their names.  Unless
identifying one of Defendants' name variants specifically, the Court will use Ms. Whitaker and Mr. Whitaker to
refer to the individual Defendants in this Memorandum Opinion.   Together, the Court will refer to Mr. Whitaker
and Ms. Whitaker herein as "Defendants."

1

Defendants left at the rental property falls short of the standards required to deny Defendants'

discharge under § 727, Defendants' omission of two vehicles from their schedules is sufficient to

deny Defendants' discharge under §727(a)(4). Denial of discharge renders Plaintiff's non-

dischargeability claims moot. *See Garland v. United States (In re Garland),* 385 B.R. 280, 301

(Bankr. E.D. Okla. 2008), *aff'd sub nom. United States Trustee v. Garland (In re Garland),* 417

B.R. 805 (10th Cir. BAP 2009) (concluding that Court's determination that debtor's discharge

should be denied rendered request for order determining dischargeability of debt under §

523(a)(1)(C) moot). The Court has also determined that Mr. Peplinski is not entitled to an

award of damages to compensate him for the time he spent investigating and prosecuting his

claims in this adversary proceeding.

FACTS

Plaintiff Stanley Z. Peplinski is Defendants' former landlord. Mr. Peplinski rented

Defendants a residential home located at 7300 Welton NE, Albuquerque, New Mexico (the

"Welton Property") for seven years. In January and February of 2013 Defendants purportedly

made cash deposits to Kirtland Federal Credit Union ("KFCU") through the night drop

representing rent payments to Mr. Peplinski on the Welton Property. Those deposits were not

credited to Mr. Peplinski's account. Efforts to trace those deposits through KFCU were

unsuccessful. *See* Exhibits 39 and 40 (Correspondence from KFCU to Mr. Peplinski stating that

KFCU has made "multiple investigations" regarding the purported deposits and has been unable

to trace the deposits after review of the night drop logs for the periods in question). In February

of 2013, Ms. Whitaker provided Mr. Peplinski a handwritten summary of the deposits so that he

could attempt to track down the payments through KFCU. *See* Exhibit 36 (handwritten note

signed by Ms. Whitaker identifying four rental payments in January and February 2013 totaling

2

$2,530).  Based on Ms. Whitaker's representations of payment, Mr. Peplinski allowed Defendants to remain in the Welton Property.  Mr. Peplinski never received the January or February 2013 rent payments.  To this day, Ms. Whitaker maintains that she made the deposits and paid the rent.

Mr. Peplinski sued Defendants in the Metropolitan Court, State of New Mexico, County of Bernalillo as Case No. T-4-CV-2013-0040000 (the "Metropolitan Court Action") based on Defendants' non-payment of rent for the Welton Property.  On April 19, 2013, Mr. Peplinski obtained a Judgment for Restitution ("Judgment") against Defendants in the Metropolitan Court Action in the amount of $8,401.70, plus interest at the rate of 8.75% per annum.  *See* Exhibit 1. The Judgment consists of the following components:

| | |
|---|---|
| Past due rent: | $ 5,750.00 |
| Pro-rated rent: | $    843.33 |
| Late fees: | $    300.00 |
| Utilities: | $    214.37 |
| Termination fee: | $ 1,150.00 |
| Costs: | $    144.00 |

The Judgment also terminated the rental agreement, ordered that the Welton Property be restored to Mr. Peplinski, and provided for the issuance of a writ of restitution ordering the removal of the Defendants and all other occupants from the Welton Property.  *Id.*

Following the entry of the Judgment, on April 22, 2013, Mr. Peplinski contacted Defendants' attorney, Peter Staiti, by email stating that the Defendants must vacate the Welton Property by midnight that day or the Sherriff would evict them from the Welton Property.  *See* Exhibit 131.  Mr. Staiti responded to Mr. Peplinski's email by stating that Defendants "misunderstood their need to be in court so long as they had the money by last Friday" and that Ms. Whitaker "has $2300 to give you today if they can continue with the lease."  *Id.*  It was Mr. Staiti's understanding that Defendants were trying to come up with that sum of money through a

3

combination of contributions from relatives and a loan, but that it turned out they were unable to do so. He recalled that the Defendants were negotiating with a lending company to obtain a loan but that, ultimately, it fell through. Ms. Whitaker likewise testified that she and Mr. Whitaker were trying to come up with that sum of money. Defendants did not pay Mr. Peplinski the $2,300 referenced in the email.

While the Metropolitan Court Action was pending, Mr. Peplinski placed rental signs at the Welton Property. One of those signs blew away. Defendants removed some of the signs and put them in the garage at the Welton Property. Defendants claim that they removed the rental signs on advice of counsel. Mr. Staiti recalled Defendants telling him about the "for rent" signs before their eviction from the Welton Property; he does not recall instructing the Defendants to remove the signs, but he did not oppose them removing the signs prior to the eviction.

Defendants ultimately were evicted from the Welton Property and vacated the Welton Property in late April of 2013.[2] They left behind some of their personal items, including several large plastic garbage bags full of papers, old mail, and records. *See* Exhibit 285. Many (if not most) of the exhibits Mr. Peplinski offered into evidence at trial came from the papers Defendants left at the Welton Property. During the Sherriff's eviction of Defendants, Mr. Peplinski took pictures of the Defendants' belongings located inside the Welton Property. The

---

[2] The exact date Defendants vacated the Welton Property is not entirely clear. The email from Mr. Peplinski to Defendants' counsel dated April 22, 2013 indicates that the Sheriff would go the next day to evict the Defendants from the Welton Property. Mr. Peplinski testified that the Sherriff came on a Tuesday and gave Defendants three days to vacate the Welton Property, but that the Defendants did not vacate the Welton Property until the following Monday. Mr. Whitaker testified that Defendants were given only one day to vacate the Welton Property. Defendants filed an emergency motion in their bankruptcy case seeking to enjoin Mr. Peplinski from preventing Defendants from removing property from the Welton Property which recited that the Defendants were evicted on April 30, 2013. *See* Case No. 7-13-11395 – Docket No. 15. The Court determined that the exception to the automatic stay set forth in 11 U.S.C. § 362(b)(22) permitted Mr. Peplinski to complete the eviction of the Defendants from the Welton Property, but that the exception did not allow Mr. Peplinski to interfere with or prevent the Defendants from removing their personal property from the Welton Property. *See* Order on Debtor's Emergency Motion, ¶ A. – Docket No. 20.

4

pictures depict various household items, including cameras, several televisions, speakers, computers, printers, camcorder, recorder/DVD player, computer games, bicycles, and various clothing, including leather jackets, boots, and shoes.

Defendants filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 23, 2013. Mr. Peter Staiti represented them in their bankruptcy case. The petition identifies the Defendants by the following names: Whitaker, Robert; and Medina-Whitaker, Elayne G. The spaces on the petition for each debtor to list "All Other names Used by the Debtor in the last 8 years (include married, maiden, and trade names)" are blank. Ms. Whitaker signed the petition "Elayne Medina Whitaker."

Mr. Whitaker's middle name is Craig. Mr. Whitaker sometimes used his middle initial, "C.", during the eight year period before the petition date. *See, e.g.,* Exhibit 33 (New Mexico driver's license); Exhibit 52 (2008 Tax Return); Exhibit 292 (current New Mexico Driver's License).

Ms. Whitaker considers her legal name to be "Elayne Medina' Whitaker." Her middle name is Gloria. She added Whitaker to her name after she married Mr. Whitaker, but she never officially changed her name to her married name. Defendants have been married since 1995. Ms. Whitaker used the following variations of her name within the eight years before the petition date:

| Name | Purpose/Source |
|---|---|
| Elaine Medina | Driver's license issued August 15, 2011, expired July 2011 *See* Exhibit 291[3]<br><br>Social Security Statement  *See* Exhibit 32<br><br>Bank Account *See* Exhibits 126 and 127 |

---

[3] Ms. Whitaker also used the name Elaine Medina on previous driver's licenses outside the 8-year period. *See* Exhibit 30 (New Mexico driver's license issued December 30, 1994 and New Mexico driver's license issued August 3, 1998).

| | |
|---|---|
| | Utilities *See* Exhibits 136 and 137 |
| Elaine Gloria Medina | As named defendant in various metropolitan court cases *See* Exhibits 45, 47, 48, and 49 |
| Elayne G. Medina | Tax returns and other IRS forms *See* Exhibits 51, 53, 55, 62, 65, 68, 69, 70, 71, 72<br><br>Blue Cross/Blue Shield *See* Exhibit 122<br><br>Cell phone contract with T-Mobile *See* Exhibit 138 |
| Elayne Medina Whitaker | Tax Return *See* Exhibit 57<br>W-2 *See* Exhibit 67<br><br>Consumer Direct Personal Care LLC Timesheet *See* Exhibit 115 |
| Elayne Medina | Tax Return *See* Exhibit 61<br><br>Southwest Medical Associates Qualified Retirement Plan *See* Exhibit 75<br><br>New Mexico Income Support Division *See* Exhibit 98 |
| Elaine Whitaker | Viola rental from Robertson & Sons Violin Shop *See* Exhibits 153, 154 158, 159, 160 |
| Elayne Medina-Whitaker | Southwest Medical Associates Profit Sharing Plan *See* Exhibit 74<br>New Mexico Neurology Associates, P.C. 401(k) Profit Sharing Plan and Trust *See* Exhibit 77 |
| Elayne G. Medina Whitaker | Earnings Statement for New Mexico Consumer Direct Personal Care, LLC *See* Exhibit 116 |

Ms. Whitaker testified that she used the spelling "Elaine" on her driver's license because that is the typical way to spell Elaine. In the Metropolitan Court Action, Mr. Peplinski identified Ms. Whitaker in the caption as "Elayne Whitaker-Medina." The rental agreement for the Welton Property identifies Ms. Whitaker as Elayne Whitaker-Medina. *See* Exhibit 4. Ms. Whitaker did not correct her name as a defendant in the Metropolitan Court Action.

6

Other, similar variations of Defendants' names were used on unsolicited junk mail the Defendants received over the years. *See, e.g.,* Exhibit 135 (Master Card Platinum solicitation sent to Elayne G. Medina). Ms. Whitaker testified that people misspelled her first name incorrectly so often that she would not bother to correct it.

Defendants testified that they provided their bankruptcy counsel with a list of all the names they had used. Defendants' bankruptcy counsel testified to the contrary that Defendants did not provide him with a list identifying all the variations of the names Defendants had used during the eight year period preceding the filing of their bankruptcy case. The Personal Information intake sheet Defendants' counsel had Defendants fill out in preparation for filing Defendants' bankruptcy case identifies Mr. Whitaker as "Whitaker, Robert." No other former names were listed.

*The Defendants' Address*

On the petition, Defendants listed their address as 7300 Welton Dr. NE, Albuquerque, New Mexico. Previously, the Defendants lived at 8607 Los Arboles NE, Albuquerque, New Mexico. As of the date of the trial in this adversary proceeding, the Defendants lived at 6229 Dennison Rd. SW, Albuquerque, New Mexico. Defendants did not list their previous address on Los Arboles in response to item 15 on the Statement of Financial Affairs. Defendants have not updated their address in their bankruptcy case.

*The Defendants' Schedules*

Under the category, "Household goods and furnishings, including audio, video, and computer equipment" the Defendants described the property as "furniture and household goods" with a value of $2000. Defendants did not separately identify a large fish tank or a reptile tank in their schedules. Under the category, "wearing apparel," the Defendants identified "clothes"

valued at $500, and under the category "furs and jewelry," the Defendants identified "watches and gold chains" with a total value of $2,500. Defendants' bankruptcy counsel, Mr. Staiti testified that he believes the total valuation of Defendants' household goods and furnishings is reasonable and accurate.

Defendants listed an interest in a PERA retirement account valued at $26,314.89. No account statement for the PERA retirement account that would establish the balance in the account as of the petition date was offered into evidence. Ms. Whitaker at one time held a retirement account in connection with her employment at Southwest Medical Associates. *See* Exhibit 74 (Account statement showing a balance of $6,587.59 as of March 31, 2002). No evidence was presented to establish that Ms. Whitaker held an interest in this retirement account as of the petition date. Mr. Whitaker had a pension account with VALIC in 2001. *See* Exhibit 234. No evidence was presented to establish that Mr. Whitaker continued to hold an interest in this retirement account as of the petition date.

*Vehicles*

The only vehicle disclosed in the Defendants' original Schedule B is a 2004 Honda Accord (the "2004 Honda") valued at $7,000. Mr. Whitaker's brother, Fred Whitaker, assisted the Defendants in purchasing the 2004 Honda by co-signing the vehicle loan. Defendants did not list Fred Whitaker in their bankruptcy schedules as a co-debtor for the 2004 Honda.

Over the years, Defendants have owned several other vehicles. They owned a 2001 GMC Jimmy that was repossessed some years before the filing of the bankruptcy petition. Defendants owned a 1998 GMC Sonoma Truck (the "1998 GMC Truck"), which was still in the garage at the Welton Property at the time they filed their bankruptcy. Ms. Whitaker purchased the 1998 GMC Truck from Walter and Cheryl Florence. The Defendants testified that the 1998

8

GMC Truck does not run, has not run for years, and was "junked" and sold for parts. Defendants never bothered to register the 1998 GMC Truck in their names because it was not running. Post-petition, Defendants amended Schedule B to list the 1998 GMC Truck. The Amended Schedule B describes the 1998 GMC Truck as "salvage value only" with an "unknown" value.

Mr. Whitaker's father, R.P. Whitaker, Jr., owned a red 1988 Chevy Truck that he loaned to the Defendants. Mr. Whitaker used the 1988 Chevy Truck to haul trash from the yard at the Welton Property. R.P. Whitaker, Jr. died in 2007 at the age of 74. *See* Exhibit 25. Defendants remained in possession of the 1988 Chevy Truck as of the date of the filing of their bankruptcy case. Although Mr. Whitaker acknowledged that he acquired the 1988 Chevy Truck as heir upon the death of his father, Mr. Whitaker has not registered the 1988 Chevy Truck in his name. Mr. Whitaker continues to view the 1988 Chevy Truck as his father's truck. He testified that he did not list the 1988 Chevy Truck in his bankruptcy schedules because it belongs to his father. The 1988 Chevy Truck is currently inoperable. Mr. Staiti, Defendants' bankruptcy counsel, testified that he believes Defendants told him that Mr. Whitaker's sister inherited the 1988 Chevy Truck, but that she was letting Mr. Whitaker use it. Defendants did not list the 1988 Chevy Truck in response to item 14 on the Statement of Financial Affairs regarding "Property held for another person."

*The Viola*

The Defendants have a daughter. Ms. Whitaker's step father rented a viola for Defendants' daughter from Robertson & Sons Violin Shop. Ms. Whitaker is also identified as a renter on the Rental Contract for the viola. *See* Exhibit 160. Defendants remained in possession of the viola at the time they filed their bankruptcy petition, even though the Rental Contract was in default. *See* Exhibit 159. Defendants did not list the viola in their bankruptcy schedules, and

did not schedule Robertson & Sons Violin Shop as a creditor.  Post-petition, the Defendants

returned the viola to Roberson & Sons Violin Shop.

*Other possible bankruptcy estate assets*

In 2007, Ms. Whitaker had a deposit with PNM in the amount of $410.00 (the "PNM

Utility Deposit").  *See* Exhibit 137.  Ms. Whitaker closed the PNM account when Defendants left

the Welton Property.  Ms. Whitaker was unaware of the PNM Utility Deposit, and did not have

the utility services from PNM transferred to another location.  Defendants did not list the PNM

Utility Deposit in their bankruptcy schedules.   Ms. Whitaker received a collection notice in 2007

relating to an account at Compass Bank.  *See* Exhibit 132.  No evidence was presented to

establish that Ms. Whitaker held an account at Compass Bank as of the petition date.  Farmers

Insurance Group issued a check payable to Elayne Whitaker in the amount of $68.44 dated

October 18, 2007.  *See* Exhibit 130.  This uncashed check was found among the papers the

Defendants left at the Welton Property.

*Other pre-petition conduct*

Ms. Whitaker worked part time as a home caretaker for Personal Care Management,

providing care for her step-father.  She turned in time sheets to Personal Care Management for

work performed during a period of time that Defendants took a trip to Disneyland with their

daughter.

The Defendants' daughter attended the Albuquerque Academy.  Each year Defendants

submitted a signed request for financial assistance from the Albuquerque Academy that disclosed

Defendants' assets, income and expenses.  Each year Defendants requested financial aid they

represented to the Albuquerque Academy that they provided financial assistance to Mr.

Whitaker's father in the amount of $450 to $500 per month.  *See* Exhibit 89 ("I have been giving

10

my parents $450 a month"); Exhibit 90 ("we have been helping him with $450 a month since Jan

05 to the present and foresee helping him with these medical expenses ongoing."); Exhibit 91

("we help financially with $500 per month").  In reality, Defendants provided financial

assistance to Mr. Whitaker's father on an intermittent basis; they did not contribute $450 to $500

each month.

Ms. Whitaker cared for her grandniece at the Welton Property.  She did not run a

daycare center at the Welton Property.  Ms. Whitaker's mother, Beatrice Medina, assisted the

Defendants by signing off on a Direct TV contract for services provided to Defendants.  *See*

Exhibit 163.

Any facts contained in the discussion section below that are not specifically set forth as

facts in this section of the Court's Memorandum Opinion are incorporated herein by reference as

additional findings of fact.

## DISCUSSION

Bankruptcy affords debtors a way to "reorder their affairs, make peace with their

creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by

the pressure and discouragement of preexisting debt.'" *Grogan v. Garner,* 498 U.S. 279, 286,

111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234,

244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).  Because of this "fresh start" policy,

"[e]xceptions to discharge are to be narrowly construed, and . . . doubt is to be resolved in the

debtor's favor."  *Affordable Bail Bonds, Inc. v. Sandoval (In re Sandoval),* 541 F.3d 997, 1001

(10th Cir. 2008) (quotation marks and citation omitted).[4]  Even so, bankruptcy relief is limited "to

---

[4] *See also Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1292 (10th Cir. 1997) ("[T]he Bankruptcy Code must
be construed liberally in favor of the debtor and strictly against the creditor.") (citation omitted).

the honest but unfortunate debtor." *Grogan,* 498 U.S. at 287 (quotation marks and citation omitted).[5]

A. §727 Objections to Discharge

Denial of discharge is a particularly harsh penalty because it prevents a debtor from discharging *any* pre-petition debts.[6] Consequently, denial of discharge is "reserved for a truly pernicious debtor." *Phillips 66 Co. v. Ritchie (In re Ritchie),* 543 B.R. 311, 319 (Bankr. D.N.M. 2015) (quotation marks and citation omitted).[7] The party objecting to discharge under 11 U.S.C. §727 bears the burden of proving, by a preponderance of the evidence, that the debtor's discharge should be denied.[8]

1. §727(a)(4) - False Oath or Account

A debtor's discharge may be denied upon a finding that "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4). A false oath within the meaning of 11 U.S.C. § 727(a)(4) may include omissions from the debtor's petition, schedules, or statement of financial affairs. *See In re Calder,* 907 F.2d 953, 955 (10th Cir. 1990) (acknowledging that "an omission of assets from a Statement of Affairs or schedule may constitute a false oath under section 727(a)(4)(A).") (citation omitted).[9] Denial of

---

[5] *See also In re Juzwiak,* 89 F.3d 424, 427 (7th Cir. 1996) ("[A] discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor.") (citations omitted).

[6] *See Blackwell Oil Co., Inc. v. Potts (In re Potts),* 501 B.R. 711, 725 (Bankr. D. Colo. 2013) (acknowledging that denial of discharge is a "harsh penalty") (citation omitted); *Associated Bank, N.A. v. Sever (In re Sever),* 438 B.R. 612, 619 (Bankr. C.D. Ill. 2010) ("A denial of discharge is an extremely harsh and drastic penalty") (citation omitted).

[7] *See also Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge . . . is an extreme step and should not be taken lightly.").

[8] *See* Fed.R.Bankr.P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."); *Brown,* 108 F.3d at 1293 and 1294 (preponderance of the evidence standard for claims under § 727(a)(2)(A) and § 727(a)(4)).

[9] *Quicken Loans, Inc. v. Splawn (In re Splawn),* 376 B.R. 747, 760 (Bankr. D.N.M. 2007) ("Omissions in a debtor's statements and schedules can constitute false oaths within the meaning of § 727(a)(4).") (citing *In re Reed,* 293 B.R. 65, 69 (Bankr. D. Kan. 2003) (remaining citations omitted); *Freelife Int'l, LLC v. Butler (In re Butler),* 377 B.R. 895, 923 (Bankr. D. Utah 2006) ("A debtor's petition, schedules, statement of financial affairs, statements made at a 341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004 examination, and answers to

12

discharge under this section requires that the false oath: 1) relate to a material matter; 2) be made knowingly; and 3) be made with intent to defraud. *See Brown,* 108 F.3d at 1294 (denial of discharge based on a false oath requires the creditor to show "by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact.") (citation omitted). *See also, Calder,* 907 F.2d at 955 ("To trigger section 727(a)(4)(A), the false oath must relate to a material matter and must be made willfully with intent to defraud.") (citation omitted). The materiality requirement is satisfied if the false oath "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *United States Trustee v. Garland (In re Garland),* 417 B.R. 805, 814 (10th Cir. BAP 2009) (quoting *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984)). Debtors have a duty to fully disclose all of their assets in their bankruptcy schedules, without deciding for themselves what is "important enough for parties in interest to know." *Garland,* 417 B.R. at 815 (citation and internal quotation marks omitted).[10] For this reason, "materiality is not defeated by the fact that the undisclosed property interests are determined to be without value." *Id.* at 814. *See also, Calder,* 907 F.2d at 955 (rejecting debtor's argument that denial of discharge was not warranted because the undisclosed assets were worthless). The requirement that the false oath be made "knowingly" is satisfied if the debtor "deliberately and consciously" signs his or her bankruptcy schedules and statement of financial affairs "knowing that they were incomplete." *In re Retz,* 606 F.3d 1189, 1198 (9th Cir. 2010).

---

interrogatories all constitute statements under oath for purposes of § 727(a)(4).") (internal quotation marks and citation omitted).

[10] *See Butler,* 377 B.R. at 922 ("It is the purpose of § 727(a)(4) to enforce a debtor's duty of disclosure . . . . The trustee and the creditors have the right to information that will allow them to evaluate the case and administer the estate's property.") (internal quotation marks and citation omitted).

13

The third element, requiring fraudulent intent, may be inferred from the surrounding facts and circumstances because a debtor is unlikely to admit an intention to defraud. *Calder,* 907 F.2d at 955-56 (observing that "the debtor will be the only person able to testify directly concerning his intent and he is unlikely to state that his intent was fraudulent[,]" and stating that '[t]herefore, fraudulent intent may be deduced from the facts and circumstances of a case.") (citations omitted).[11] A "reckless indifference to the truth" can satisfy the fraudulent intent requirement for denial of discharge under 11 U.S.C. § 727(a)(4). *See Butler,* 377 B.R. at 922 (observing that "'reckless indifference to the truth . . . has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A).'") (quoting *Boroff v. Tully (In re Tully),* 818 F.2d 106, 112 (1st Cir. 1987)).[12] The Court will not, however, deny discharge if the false oath is the result of an honest error, mistake, inadvertence, or mere inaccuracy. *Brown,* 108 F.3d at 1294-95 (citations omitted).

*Failure to list aliases*[13]

A debtor's failure to disclose all aliases on the petition can be sufficient to deny the debtor's discharge under 11 U.S.C. § 727(a)(4), provided the omission was made with the requisite intent to defraud. *See, e.g., Torgenrud v. Schmitz (In re Schmitz),* 224 B.R. 149 (Bankr. D. Mont. 1998) (discharge denied based on debtor's false oath in failing to list her current, married name, and instead listing her maiden name as the only name she was known by). Ms.

---

[11] *Cf. In re Warren,* 512 F.3d 1241, 1249 (10th Cir. 2008) (discussing actual intent to defraud under § 727(a)(2), and observing that "[b]ecause rare is the occasion when a party lays bare his or her subjective intent, '[f]raudulent intent . . . may be established by circumstantial evidence, or by inferences drawn from a course of conduct.'") (quoting *Farmers Coop. Ass'n of Talmage, Kan. v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982)).

[12] *See also Stamat v. Neary,* 635 F.3d 974, 982 (7th Cir. 2011) ("a showing of reckless disregard for the truth is sufficient to prove fraudulent intent.") (citations omitted).

[13] Plaintiff also asserts that Defendants were required to list as aliases the names of relatives who assisted Defendants in obtaining goods and services. For example, Ms. Whitaker's mother, Beatrice Medina, co-signed a contract for Direct TV services. Mr. Whitaker's brother, Fred, co-signed for the purchase of a vehicle. Plaintiff's contention is specious. Beatrice Medina and Fred Whitaker are separate individuals, and it would be inappropriate for Defendants to list Beatrice Medina and Fred Whitaker as aliases.

14

Whitaker used a variety of names during the eight year period preceding the commencement of the bankruptcy case but did not separately disclose all of those variations on the petition. Most concerning is the alternate spelling of her first name as either "Elaine" or "Elayne." Yet, the purpose of listing all aliases on the petition is to allow creditors to confirm whether the debtor is a person who owes them a debt. *Cf. Minsky v. Silverstein (In re Silverstein),* 151 B.R. 657, 663 (Bankr. E.D.N.Y. 1993) (reasoning that the debtor's failure to list aliases was not material because "[a]ll listed creditors knew Debtor by his legal name and no evidence was presented to suggest there might be any other creditors that would only know the Debtor by his alias.").[14] By listing her name on the petition as "Elayne G. Medina Whitaker," Ms. Whitaker created a conglomerate of her name consisting of her maiden name, her middle initial, and her married name. With this combination of names, creditors and the Chapter 7 Trustee would be able to discern Ms. Whitaker's financial dealings. Ms. Whitaker should have separately listed each variation of her name, but based on the evidence before the Court, the Court does not conclude that her failure to do so was done intentionally and fraudulently in an effort to mislead creditors or the Chapter 7 Trustee. *Cf. BTE Concrete Formwork, LLC v. Arbaney (In re Arbaney,* 345 B.R. 293, 307 (Bankr. D. Colo. 2006) ("To deny the Debtor a discharge under § 727(a)(4), the Court must be able to find that the debtor intended to defraud and mislead the other parties in the case."). *See also McCue v. Galbraith (In re Galbraith),* 17 B.R. 302, 304 (Bankr. M.D. Fla. 1982) (observing that "[i]t is difficult to conceive that such an omission [of aliases] is made with the fraudulent intent simply because an omission of proper names, rather than assists, harms the Debtor."). Similarly, Mr. Whitaker's omission of his middle initial from the petition does not rise to the level of a knowing and fraudulent oath necessary for denial of discharge under 11

---

[14] *See also Schmitz,* 224 B.R. at 151 (disclosure of the debtor's name "has a direct impact on the creditors' and the Trustee's ability to discover assets and or business dealings.").

U.S.C. § 727(a)(4).  There is no indication that Mr. Whitaker omitted his middle initial in an effort to mislead creditors or the Chapter 7 Trustee.

### Failure to list prior addresses

Mr. Peplinski complains that Defendants failed to list prior assets in their schedules or statement of financial affairs.   Item 15 on the Statement of Financial Affairs requires debtors to list prior addresses if they have moved within the three year period preceding the commencement of the bankruptcy case.  Defendants lived at the Welton Property for seven years.  They were not required to list any other addresses because they lived at the Welton Property during the entire reportable period.

### Undervaluation of disclosed asset

A debtor's undervaluation of a scheduled asset may be sufficient to sustain a claim to deny the debtor's discharge under 11 U.S.C. § 727(a)(4).  *Robinson v. Worley,* 540 B.R. 568, 577 (Bankr. M.D.N.C. 2015) (collecting cases).  Defendants valued their interest in a PERA retirement at $26,314.99.  Plaintiff contends that Defendants undervalued this asset, but provided insufficient evidence that the value of the scheduled asset is incorrect.  Plaintiff extrapolated the projected value based on a historical contribution amount.  The Court directed Defendants to obtain a copy of their PERA statement reflecting the amounts in the account as of the bankruptcy petition date, but Defendants never provided such a statement.  Nevertheless, Plaintiff did not meet his burden of establishing that Defendants made a false oath by undervaluing their interest in the PERA retirement account.

### Failure to list assets

Mr. Peplinski asserts that Defendants failed to schedule an interest in certain retirement accounts, an account with Compass Bank, a utility deposit with PNM, an uncashed insurance

check, and several vehicles, and that these omissions constitute false oaths within the meaning of 11 U.S.C. § 727(a)(4). The Court will address each of these alleged omissions in turn.

No evidence was presented to establish that the Defendants held any interest in any retirement account other than the PERA retirement account as of the petition date. Nor was any evidence of an existing account at Compass Bank presented. These alleged omissions of additional retirement accounts and an account at Compass Bank from the Defendants' bankruptcy schedules are, therefore, insufficient to support a claim under 11 U.S.C. § 727(a)(4).

The utility deposit with PNM may have existed as of the petition date. But Defendants' testimony that they were unaware of the deposit and did not transfer the deposit to another address indicates that, even if the deposit existed, the Defendants' omission of the deposit from their schedules was not made knowingly or fraudulently. The Defendants' failure to list the uncashed insurance check in the amount of $68.00 likewise is insufficient to deny the Defendants' discharge under 11 U.S.C. 727(a)(4). The insurance check was issued in 2007. Presumably, it could not be cashed some five years later and cannot be treated as an asset of the bankruptcy estate.

The evidence presented established that the Defendants failed to list two vehicles on their original schedules: a 1998 GMC Truck; and a 1988 Chevy Truck. Both vehicles were inoperable as of the petition date. By failing to list the 1998 GMC Truck and the 1988 Chevy Truck on their bankruptcy schedules signed under penalty of perjury as being true and correct, Defendants made a false oath. The false oath was also material notwithstanding that the trucks did not work and were only of salvage value.[15] What remains is whether the omission was both knowing and fraudulent.

---

[15] *See Garland,* 417 B.R. at 814 ("[M]ateriality is not defeated by the fact that the undisclosed property interest are determined to be without value.") (citation omitted). *See also United States Trustee v. Keck (In re Keck),* 363 B.R.

The Defendants knew that both trucks were in their possession as of the petition date. The 1998 GMC Truck was parked in the garage at the Welton property on the petition date, and many of their possessions were packed in the truck bed at that time. The 1988 Chevy Truck was also located at the Welton Property on the petition date. Yet the original schedules listed only one vehicle, the 2004 Honda. The Court, therefore concludes that the omission of the 1998 GMC Truck and the 1988 Chevy Truck from the schedules the Defendants signed under oath was a knowing omission.

The omission was also fraudulent. Mr. Whitaker acknowledged that he inherited the 1988 Chevy Truck upon his father's death, but he did not schedule the truck because he maintains that it still belongs to his father. Defendants gave conflicting information to the Defendants' bankruptcy counsel that Mr. Whitaker's sister owned the 1988 Chevy Truck, but allowed Defendants to use it. Yet, if the 1988 Chevy Truck belonged to Mr. Whitaker's sister, the Defendants should have listed it on their Statement of Financial Affairs as property in their possession being held for another. They did not.

Mr. Whitaker's incredible insistence that the 1988 Chevy Truck remains the property of his deceased father, together with Defendants' treatment of the 1998 GMC Truck as their property on the petition date indicates that Defendants' failure to list those vehicles cannot be explained away as mere inadvertence, honest error, or mistake. At the very least, the failure to list the 1998 GMC Truck and the 1988 Chevy Truck anywhere in Defendants' schedules or statement of financial affairs evidences a reckless disregard for the truth in disclosing all possible assets of their bankruptcy estate.

---

193, 201 (Bankr. D. Kan. 2007) ("[E]ven assets of little or no value may give rise to a denial of discharge if the omission prevents the trustee or a creditor from fully examining the debtor's pre-bankruptcy financial dealings.") (citation omitted).

Defendants amended their Schedules to list the 1998 GMC Truck, but only *after* Mr. Peplinski raised an issue about the Defendants' failure to schedule it. A debtor "cannot excise a false oath by making subsequent corrections[.]" *Keck,* 363 B.R. at 201. In contrast, where a debtor promptly corrects the omission of an asset on his or her own accord, no inference of fraudulent intent can be drawn based solely on the omission. *See Brown,* 108 F.3d at 1294 ("[W]e believe as a matter of law that no inference of fraudulent intent can be drawn from an omission when the debtor promptly brings it to the court's or trustee's attention absent other evidence of fraud.") (emphasis in original omitted). In sum, the Court concludes that Defendants' failure to schedule not one, but two vehicles on their original bankruptcy schedules signed under oath constitutes a knowing, fraudulent, and material omission sufficient to deny their discharge under 11 U.S.C. § 727(a)(4).

### 2. *§ 727(a)(2) - concealment*

Denial of discharge under 11 U.S.C. § 727(a)(2) requires the objecting party to demonstrate, "by a preponderance of the evidence that (1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor." *Brown,* 108 F.3d at 1293 (citing 11 U.S.C. § 727(a)(2)(A)). Mr. Peplinski argues that Defendants concealed $6,600 that is property of the bankruptcy estate that should have been listed on Defendants' bankruptcy schedules, apparently reasoning that, since Defendants did not pay $1,100 per month in rent for six months preceding the filing of the bankruptcy petition, the Defendants necessarily had that cash on hand when they filed their bankruptcy case. Mr. Peplinski presented no evidence to support this contention. The Court concludes based on the evidence before it that no improper

19

concealment occurred, and will, therefore, dismiss Mr. Peplinski's claim to deny Defendants' discharge under 11 U.S.C. § 727(a)(2).

### 3. *§ 727(a)(3) – Failure to maintain records*

A debtor's discharge may also be denied if

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

Denial of discharge under this section requires the Plaintiff to demonstrate, by a preponderance of the evidence, that Defendants "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain [the Defendants'] financial condition and *material business* transactions." *Brown,* 108 F.3d at 1295 (emphasis in *Brown*) (citation omitted). *See also The Cadle Co. v. Stewart (In re Stewart),* 263 B.R. 608, 615 (10th Cir. BAP 2001) (same). Only upon a sufficient showing that the debtor failed to maintain records does the burden shift to the debtor to demonstrate that the failure to maintain sufficient records was justified. *See Stewart,* 263 B.R. at 615 ("If the creditor makes such a showing, the burden then shifts to the debtor to justify his or her failure to maintain the records.") (citation omitted).[16] As evidence of Defendants' alleged failure to maintain records, Mr. Peplinski relies on the garbage bags Defendants left at the Welton Property which were full of papers, records and other documents relating to Defendants' finances. This evidence falls well short of what is required to deny a debtor's discharge under 11 U.S.C. § 727(a)(3) based on the debtor's failure to keep or preserve

---

[16] *See also McVay v. Phouminh (In re Phouminh),* 339 B.R. 231, 241 (Bankr. D. Colo. 2005) ("Only if the [party objecting to discharge] . . . accomplishes that initial task does the burden shift to the Debtor to come forward with an explanation for the lack of recorded information.") (citations omitted).

recorded information regarding the debtor's financial condition. Many of the documents Mr. Peplinski recovered from the garbage bags are dated several years before the filing of Defendants' bankruptcy petition. As such, they are not even relevant to the Defendants' financial condition as of the time they filed their bankruptcy case. Further, even if Defendants intended to destroy the documents, they did not do so. Documents existed from which Defendants' financial condition and transactions could be ascertained. The Court will dismiss Mr. Peplinski's claim to deny Defendants' discharge under 11 U.S.C. § 727(a)(3).

B. § 523(a) – non-dischargeability claims

Plaintiff requests the Court to determine that the Judgment is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), as a debt obtained by false representation, false pretenses, or actual fraud. Plaintiff also asserts that the debt represented by the Judgment is non-dischargeable under 11 U.S.C. § 523(a)(4) as a debt based on a claim of embezzlement or larceny. The Court need not address these claims, having determined that the Defendants are not entitled to receive a discharge. Even so, Ms. Whitaker's actions with respect to the alleged deposits of rent in January and February provide an example of dishonest behavior. The evidence concerning the purported January and February rent deposits establishes that Ms. Whitaker made a false representation to Mr. Peplinski with the intent to deceive him. She provided Mr. Whitaker with a list identifying deposits she maintains she made in January and February, yet those deposits were never found despite KFCU's investigation of the night log deposits for the periods in question. Based on this evidence, the Court finds that the Defendants did not make the deposits, yet Ms. Whitaker insisted that they did make those deposits so Defendants could remain in the Welton Property.

C. Plaintiff's request for compensation and costs in bringing this lawsuit

Plaintiff's complaint includes a request for an award of compensation for his time in bringing this matter to trial. There is no statutory basis in 11 U.S.C. § 727, nor is there a provision in the Bankruptcy Rules, for an award of attorneys' fees to a creditor who prevails on a claim for denial of a debtor's discharge. *See Tuloil, Inc. v. Shahid (In re Shahid),* 254 B.R. 40, 43 (10th Cir. BAP 2000) ("§ 727 does not provide a statutory basis for an award of attorney's fees. Nor is there a basis in the rules."). *Cf. Taylor v. Taylor (In re Taylor),* 478 B.R. 419, 429 (10th Cir. BAP 2012), *aff'd* 737 F.3d 670 (10th Cir. 2013) ("In the absence of an agreement . . . no bankruptcy statute or rule awards fees to a creditor who successfully excepts a debt from discharge."). Similarly, there is no basis to award a *pro se* party compensation for his time prosecuting this action.

Plaintiff also asks the Court to award costs. Bankruptcy Rule 7054 provides that "[t]he Court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Fed.R.Bankr.P. 7054(b)(1). An award of costs under this rule is discretionary. *See In re Borges,* 2014 WL 1364956, *1 (10th Cir. BAP Apr. 8, 2014) (unpublished) (observing that "unlike civil cases, there is no presumption for an award of costs to the prevailing party" and stating further that "Bankruptcy courts have broad discretion when faced with a motion for costs . . ."). *See also, Northwestern Corp. v. Magten Asset Mgmt. Corp. (In re Northwestern Corp.),* 326 B.R. 519, 529 (Bankr. D. Del. 2005), *aff'd* 369 B.R. 775 (D. Del. 2007) ("It is clear an award of costs under Rule 7054(b) is discretionary.") (citation omitted). Only certain types of costs may be awarded. *See* 28 U.S.C. § 1920 (federal statute enumerating taxable costs). *See also Celotex Corp. v. AIU Ins. Co. (In re Celotex Corp.),* 251 B.R. 163, 169 (Bankr. M.D. Fla. 2000) (observing that, "the appropriate statute for determining

22

which costs to award [under Rule 7045(b)] is 28 U.S.C. § 1920, unless the prevailing party can show it is entitled to an award of costs pursuant to another Bankruptcy Code section, such as 11 U.S.C. §§ 330 or 503.") (citation omitted).  Plaintiff did not identify the particular costs for which he seeks reimbursement, nor did he quantify the amounts requested.  The Court, therefore, declines to exercise its discretion to award Plaintiff any costs under Fed.R.Bankr.P. 7054(b).

## CONCLUSION

A bankruptcy discharge is a privilege, not a right.  *In re Juzwiak,* 89 F.3d at 427.  *See also, Wieland v. Gordon (In re Gordon),* 509 B.R. 359, 370 (Bankr. N.D. Okla. 2014) ("'[A] discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor.'") (quoting *Juzwiak,* 89 F.3d at 427).  Debtors "who 'play fast and loose with their assets or with the reality of their affairs'" may find themselves ineligible to receive a discharge. *Butler,* 377 B.R. at 927 (quoting *Tully,* 818 F.2d at 108).  Here, some of Defendants' pre-petition conduct revealed at trial raises a genuine concern about the Defendants' propensity for being completely forthright and honest in their financial dealings.  They appear willing to tell half-truths when it benefits them, rationalizing that such behavior was justified under the circumstances.

With respect to Defendants' bankruptcy petition, schedules, and statement of financial affairs, Defendants exhibited, at the very least, a reckless indifference to the completeness and accuracy in disclosing all of Defendants' assets.  Defendants did not list the 1988 Chevy Truck or the 1998 GMC Truck on their original schedules in an effort to keep these possessions out of their bankruptcy estate.  Only after the omission was pointed out to them did Defendants amend their schedules, and even then, they persisted in omitting the 1998 Chevy Truck, maintaining that Mr. Whitaker's late father continued to own it.  The Court therefore concludes that Defendants'

omission of these two inoperable vehicles from their schedules constitutes a false oath sufficient to deny the Defendants' discharge under 11 U.S.C. § 727(a)(4). Having determined that Defendants' discharge should be denied, the Court need not address Plaintiff's non-dischargeability claims under 11 U .S.C. § 523(a).

The Court will enter a judgment consistent with this Memorandum Opinion.


_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: January 24, 2017

COPY TO:

Stanley Z. Peplinski
Plaintiff
11220 Country Club DR. NE
Albuquerque, NM 87111

Robert Whitaker
Elayne G. Medina-Whitaker
Defendants
6225 Dennison Rd. SW
Albuquerque, NM 87121